**MILWAUKEE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Daniel R. BUTLER, Defendant.**

**No. IP 82–926–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 15, 1985.

Frank I. Magers, Indianapolis, Ind., for plaintiff.

William V. Barteau, Speedway, Ind., for defendant.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

The Court, having heretofore heard the evidence in this cause, limited to the issue of liability, now makes its findings of fact and conclusions of law in the form of this memorandum. Rule 52(a), Federal Rules of Civil Procedure.

### Background

On October 28, 1979, defendant, Daniel R. Butler, was struck by an automobile near the intersection of West 34th Street and High School Road in Indianapolis, Indiana. The striking followed an altercation between defendant and one of his friends with two unidentified young males, one of whom was the driver of the car which struck the defendant. The vehicle that struck defendant did not stop following the incident and thus was a "hit and run" automobile within the meaning of the term as defined in the insurance policies written by plaintiff, Milwaukee Mutual Insurance Company.

Defendant received extensive injuries as a result of the striking, was hospitalized

for over three weeks and was confined to his bed at home for several months thereafter.

The incident was reported to the Indianapolis Police Department and an investigation was undertaken by that department immediately following the striking. With the assistance of a Marion County Deputy Sheriff, a relative of defendant, a tentative identification of the driver and owner of the vehicle that struck defendant was made and charges were filed against the alleged driver, a juvenile, in the Juvenile Division of the Marion County Superior Court. A hearing was held in such juvenile case in May, 1980, at which time defendant was unable to identify the charged juvenile as the driver of the vehicle which had struck him, and he was unable to make positive identification of the juvenile's automobile as such vehicle. As a result, the charges against the juvenile were dismissed.

Until the time of the hearing in Juvenile Court, defendant was operating under the belief that the driver and owner of the vehicle which had struck him were known, and he was unaware that he could have insurance coverage under insurance policies held by his relatives occupying the same household, if the identity of the owner and driver of the vehicle which struck him were unknown. Thereafter he hired counsel, who put plaintiff on notice by a letter dated June 24, 1980, following by a telephone call on July 1, 1980.

At the time of his injuries, defendant was residing with his parents, Samuel P. and Barbara Butler, and his sister, Judith Butler, in his parents' residence. His father had an insurance policy in effect with Milwaukee Mutual which provided uninsured motorist coverage with $15,000/30,000 limits. This policy also provided for medical services coverage of $2,000. It was as to this policy which defendant originally claimed benefits.

Defendant's sister, Judith Butler, also had had an insurance policy in effect with Milwaukee Mutual which provided for $15,000/30,000 uninsured motorist coverage and $1,000 medical services coverage. Under the terms of the policies, defendant was included within the definition of "insured" in that he was a resident of the same household with his father and his sister, and he was not otherwise excluded by the terms of the policy.

Ms. Butler's original policy with the plaintiff covered the period from April 23, 1979, to October 23, 1979. Before the termination date of October 23, 1979, she received a "renewal certificate" from plaintiff which stated, in pertinent part, that: "In consideration of the payment of the premium shown below, this policy is hereby extended for the Policy Period designated." The policy period so designated was from October 23, 1979, to April 23, 1980, and the premium payment was $176.80. No such payment was ever made. After receiving a final notice that the renewal premium had not been received by plaintiff, Ms. Butler received a notice from plaintiff that her policy had lapsed. In January, 1980 she applied for and was issued a new policy from plaintiff covering her for the period of January 14, 1980, to July 14, 1980.

Plaintiff's local representative, Jerry Jenkins, responded to defendant's notice on August 20, 1980 by letter. Mr. Jenkins testified in deposition that he opened a file on the case, but he took no further action on the claim until approximately a year later when he contracted with an independent adjusting company, Crawford and Company, to investigate and adjust the claim. Crawford and Company representatives met with defendant's attorney on several occasions, and said attorney supplied Crawford and Company with all available medical and other information available. Two appointments were made to obtain defendant's statement, as requested by Crawford and Company, but the Crawford and Company representative failed to appear. Defendant's attorney then contacted Mr. Jenkins by letter of October 19, 1981 and informed him of the status of the case and requested that immediate action be taken. Following this, the Crawford and Company representative appeared and took a written statement from defendant.

Defendant filed a John Doe complaint against the unknown defendants and plaintiff in the Marion County Superior Court on October 23, 1981. Plaintiff appeared in that case and filed various motions. Plaintiff then filed this action, seeking a declaratory judgment that it was not liable to defendant under the policies above mentioned. Defendant filed a counterclaim for relief under the policies.

### The Samuel P. Butler Policy
### I.

■ Initially, the Court must determine whether the defendant gave sufficient notice to plaintiff of his claim under the insurance contract. Under Indiana law, the failure of the insured to give reasonable notice constitutes a material breach of the terms of the policy; however, if the insured can sustain his burden of proving that the insurer was not prejudiced by the late notice, then coverage may not be denied on that basis. *Miller v. Dilts*, 463 N.E.2d 257, 265–66 (Ind.1984).

■ It is not completely clear under the instant contract as to when Mr. Butler was required to notify his insurer of his claim. On page three of the contract it is provided that if the identity of the driver or owner of a hit-and-run automobile cannot be ascertained, then the insured must report the accident within 24 hours to a police officer and must file with the company within thirty days thereafter a sworn statement that he has a cause of action arising out of the accident. Later, on page four of the policy, it states that written notice must be given within twenty days following the date of the accident, occurrence or loss, provided that the failure to give such notice within the time specified shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that such notice was given as soon as reasonably possible. This Court need not decide whether or not the notice given by defendant was reasonable under the contract and facts of this case because it is clear that, even if the notice was late, the plaintiff, as insurer, was not prejudiced thereby.

The incident at issue was promptly reported to the Indianapolis Police Department as well as the Marion County Sheriff's Department. A thorough investigation ensued which resulted in an arrest of a suspect who was subsequently released because of the inability of the witnesses to identify him. It is doubtful that the plaintiff, even had it been given more prompt notice, could have or would have conducted a more effective investigation. This is manifested by the actions which Milwaukee Mutual did take (or failed to take) once it was actually notified of defendant's claim. The plaintiff's claims manager opened a file on the matter after receiving notification of the claim but took no real action other than to request copies of defendant's medical bills and reports. Such reports, even if submitted much earlier, would not have aided the plaintiff in identifying the hit-and-run vehicle. Not until a year after being notified of the claim did Milwaukee Mutual assign the case to an independent adjusting company for investigation of the claim. Four months after this assignment, the independent adjuster finally took the insured's statement, but only after missing two previous appointments for that purpose.

The insured has established that the insurer was not prejudiced, under the facts of this case, by the timing of the claim notification even assuming that it was late, because it is unlikely that Milwaukee Mutual could have identified the driver and/or owner of the offending vehicle even given an earlier opportunity to do so. Thus, defendant's claim cannot be denied on the basis of untimely notice.

### II.

The second issue before the Court is whether a victim covered under an uninsured motorist provision of an automobile liability policy may recover from his own carrier for injuries resulting from the intentional wrong of an uninsured motorist when the policy protects the insured from damages "caused by accident." This ap-

pears to be a case of first impression under Indiana law, which is the law to be applied in this action.

■ Essentially, the determination of whether an intentional act constitutes an "accident" within the meaning of an uninsured motorist provision depends upon whether such an act is viewed from the standpoint of the victim or from the standpoint of the intentional wrongdoer. It seems clear to this Court that the proper standpoint from which to view such an occurrence is that of the victim. A victim's injuries are just as unexpected and unwelcome—accidental, if you will—to him whether they are intentionally, negligently, or otherwise delivered. This Court believes that, given the opportunity, the Indiana Supreme Court would take the "victim viewpoint" approach, thus aligning itself with the rule that injuries intentionally inflicted by an uninsured motorist fall within the meaning of damages "caused by accident" in the insured victim's uninsured motorist coverage. *State Farm Fire & Casualty Company v. Tringali*, 686 F.2d 821, 824 (9th Cir.1982) (construing Hawaii law); *Sciascia v. American Insurance Company*, 183 N.J.Super. 352, 443 A.2d 1118, 1120 (1982); *Kish v. Central National Insurance Group of Omaha*, 67 Ohio St.2d 41, 424 N.E.2d 288, 291 (1981); *Tomlin v. State Farm Mutual Automobile Liability Insurance Company*, 95 Wis.2d 215, 290 N.W.2d 285, 288 (1980) (construing automobile liability provision other than that for uninsured motorist); *Leatherby Insurance Company v. Willoughby*, 315 So.2d 553, 555 (Fla.Dist.Ct.App.1975); *Davis v. State Farm Mutual Automobile Insurance Company*, 264 Or. 547, 507 P.2d 9, 10 (1973) (construing Michigan law).

The Indiana Court of Appeals, by focusing on the insured victim, has implicitly recognized the rationale behind this position by noting that "the duty of the insurer to pay damages arises solely out of its contract with its insured and not by reason of any special relationship between the insurer and the uninsured motorist." *Bocek v. Inter-Insurance Exchange of Chicago Motor Club*, 175 Ind.App. 69, 369 N.E.2d 1093, 1096 (1977). This interpretation of the language "caused by accident" is also supported by the declaration of the Indiana Supreme Court that "[i]t is the rule ... that an ambiguous term in an insurance policy will be resolved in favor of the insured." *Freeman v. Commonwealth Life Insurance Company*, 259 Ind. 237, 286 N.E.2d 396, 397 (1972).

■ That the incident at bar was "caused by accident" within the meaning of the policy under Indiana law is further evidenced by the fact that Indiana is a compulsory automobile liability insurance state. Ind.Code § 9–1–4–3.5 (Supp.1984). Compulsory insurance statutes manifest a social policy to guarantee compensation for victims of traffic mishaps. Other jurisdictions which require such insurance, recognizing that its purpose is to provide broad protection, have held that injuries suffered as the result of an intentional act by the insured are caused "by accident" and thus are covered by policies utilizing such language. *State Farm Fire and Casualty Company v. Tringali, supra; Sciascia v. American Insurance Company, supra; Hartford Accident and Indemnity Company v. Wolbarst*, 95 N.H. 40, 57 A.2d 151, 153 (1948). The general rule of insurance law that voids a policy indemnifying an insured against liability for his willful wrong does not apply to compulsory automobile liability insurance because "[t]he statute itself is declaratory of public policy applicable to compulsory insurance and supersedes any rule of public policy which obtains in ordinary insurance law." *Wheeler v. O'Connell*, 297 Mass. 549, 9 N.E.2d 544, 547 (1937).

This Court need not decide whether a victim of intentional harm may recover under the intentional wrongdoer's own insurance coverage because the case at bar concerns the distinct situation in which the victim and the insured are one and the same, by virtue of uninsured motorist coverage. However, given Indiana's compulsory insurance statute and the fact that intentional harm is just as "accidental" to the victim whether it is he or the tortfeasor who is insured, this distinction is not of critical importance and it would not change our conclusion on this issue.

■ Defendant's injuries in this case were "caused by accident" within the meaning of the instant uninsured motorist provision, thus causing plaintiff to be liable to defendant thereunder. The maximum amount of such insurance is in the amount of $15,000 for bodily injury and $2,000 for medical expenses. Although the issue of the amount of damages was reserved, it is obvious from material in the file that defendant's loss in each category is substantially more than the amount of insurance.

### The Judith Butler Policy

The final issue which confronts the Court is whether the defendant's sister's policy with plaintiff, covering the defendant as an insured, was in effect at the time of the hit-and-run incident. We hold that it was not.

The credible evidence shows that Ms. Butler did receive communications from plaintiff, prior to her brother's mishap, stating that her insurance protection was being terminated at the expiration of her policy period for nonpayment of premium. However, it is ultimately irrelevant whether or not she received such notice. Plaintiff is not required to give notice, since the policy was not "cancelled" within the meaning of Ind.Code § 27–7–6–1 *et seq.*, but rather was "not renewed" due to Ms. Butler's failure to pay the renewal premium. *American Family Mutual Insurance Company v. Ramsey*, 425 N.E.2d 243, 244 (Ind.Ct.App.1981). Defendant argues that plaintiff renewed the policy by issuing a "renewal certificate" to Ms. Butler and therefore a notice of cancellation was subsequently required prior to the termination of the policy. However, this is not the case.

■ The Indiana Court of Appeals has recognized the general rule that "the delivery of a policy by the insurer to the insured upon the expiration of a policy without request by the insured is an offer which must be accepted by the insured before a contract of insurance is effective." *Cook v. Michigan Mutual Liability Company*, 154 Ind.App. 346, 289 N.E.2d 754, 757 (1972). Applying this rule to the facts of the case, the court went on to hold that when a renewal policy recites the payment of a premium as consideration, and there is no intention to pay the required premium, there is no valid insurance policy. *Id.* Here, as in *Cook*, the "renewal policy" recites the payment of the premium as consideration for the extension of the policy. Ms. Butler did not pay, nor did she have any intention of paying the required premium. Therefore, no renewal took place and the policy lapsed as of October 23, 1979, five days before her brother's accident.

### Summary

For all the foregoing reasons, the plaintiff is liable under the insurance policy purchased by Samuel P. Butler for the injuries suffered in the accident of October 28, 1979, by Daniel R. Butler in an amount not to exceed $15,000 for personal injuries and $2,000 for medical expenses. There is no such liability under the policy purchased by Judith Butler.