**AMERICAN UNDERWRITERS GROUP, INC.,** Attorney-in-Fact for the Subscribers at the American Interinsurance Exchange, Plaintiff-Appellant,

v.

**Paul J. WILLIAMSON, et al.,**
**Defendants-Appellees.**

**No. 3–1085A288.**

Court of Appeals of Indiana,
Third District.

Aug. 28, 1986.

Paul C. Raver, Sr., Kent C. Parr, Raver, Jordan & Associates, Fort Wayne, for plaintiff-appellant.

Richard K. Muntz, Muntz & Vanderbeck, P.C., LaGrange, for defendant-appellee Lambright.

Edward J. Liptak, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for defendant-appellee Ford Motor Credit Co.

W.L. McLaughlin, Simpson & McLaughlin, Goshen, for defendant-appellee Paul J. Williamson.

GARRARD, Judge.

On February 23, 1984, Paul J. Williamson (Williamson) executed a lease with the Ford Motor Credit Company (FMC) for the use of a 1984 Mercury Lynx automobile. Williamson was obligated to insure the vehicle for the term of the lease, so he applied for an automobile insurance policy to be provided by the appellant, American Underwriters Group, Inc. on March 2, 1984. One of the questions posed to Williamson asked whether he had any form of mental or physical impairment. Williamson answered in the negative. Consequently, American Underwriters issued an insurance policy to Williamson providing coverage from March 2, 1984 to September 2, 1984, and showing FMC as "Loss Payee." It is undisputed that Williamson had a history of epileptic seizures.

On April 23, 1984 the 1984 Mercury Lynx, driven by Williamson, crossed the center line, struck a horse drawn buggy, and killed the driver, Felty V. Lambright. The automobile was a total loss. Subsequently, American Underwriters learned that Williamson had a history of epileptic seizures and notified him that the insurance policy was being rescinded as of the date of its inception, March 2, 1984, on the grounds that a material misrepresentation was made in the application of insurance. The premium was refunded in full.

American Underwriters then filed a complaint for declaratory judgment seeking to have all rights and liabilities concerning the insurance contract determined by the court. The complaint named Williamson, FMC and Menno V. Lambright, administrator of the estate of Felty Lambright, as defendants. After discovery, American Underwriters moved for summary judgment against all defendants, claiming that it was entitled to "rescind the policy *ab initio*" because of a material misrepresentation by the insured.[1]

---

1. We find the inclusion of "*ab initio*" redundant. To rescind means to void the contract from its inception.

This motion was denied by the trial court. Lambright subsequently moved for summary judgment on the ground that public policy as expressed by IC 9-1-4-3.5 precluded an insurer from rescinding a policy. FMC also moved for summary judgment claiming that rescission was unavailable as to it because the insurance contract itself did not permit rescission, and as a third party beneficiary it had relied to its detriment on the contract. The trial court granted Lambright's and FMC's motion and held that the policy was in full force and effect on the date of the accident.

We affirm.

On appeal American Underwriters raises the following issues:

I. Whether public policy as expressed by IC 9-1-4-3.5 precludes an insurer from rescinding an automobile liability policy upon discovery of a material misrepresentation contained in the application.

II. Whether the trial court erred in holding that rescission was also unavailable as to FMC.

III. Whether the trial court erred in concluding that a lessee of a motor vehicle has a duty to maintain financial responsibility.

### I.

American Underwriters relies on the case of *Automobile Underwriters, Inc. v. Stover* (1971), 148 Ind.App. 555, 268 N.E.2d 114 for the proposition that an automobile insurer may properly rescind a policy where the insured has misrepresented a fact material to the risk. In *Stover*, the insured gave a negative answer at the time of the initial application for liability insurance to the question of whether he had any physical or mental impairment. It was undisputed that he had a history of epileptic seizures. In an action against Stover, a passenger in the insured's vehicle, the insurance company sought to rescind the policy. The court held that the policy was voidable at the company's option. 268 N.E.2d at 116. *Stover* is factually indistinguishable from the case at bar.

■ However, when *Stover* was decided, the Financial Responsibility Act did not require a resident or non-resident to carry motor vehicle liability insurance until after the occurrence of the first accident. *Grimes v. Government Emp. Ins. Co.* (1980), Ind.App., 402 N.E.2d 50, 52. In 1982, the Indiana Legislature enacted IC 9-1-4-3.5 (P.L. 83-1982), which required proof of financial responsibility before a vehicle could be registered. In 1984, this statute was amended by P.L. 71-1984 to expressly require that financial responsibility be continuously maintained as long as the motor vehicle was operated on the roads, streets or highways of Indiana. IC 9-1-4-3.5(b).[2] While the incident here occurred prior to the effective date of IC 9-1-4-3.5 as amended by P.L. 71-1984, this subsequent amendment is nonetheless important in determining the legislature's intent.[3] The subsequent amendment of a statute is indicative of the legislature's intent at the initial enactment of the statute. *United States Fidelity and Guaranty v. DeFluiter* (1983), Ind.App., 456 N.E.2d 429, 432.

---

2. IC 9-1-4-3.5 has been interpreted as being a compulsory insurance statute. *Milwaukee Mut. Ins. Co. v. Butler* (S.D.Ind.1985), 615 F.Supp. 491, 495. Technically, this is incorrect since financial responsibility may be proved by insurance, self-insurance, by bond, or by deposit of money or securities. IC 9-2-1-16; IC 9-2-1-37.

3. American Underwriters maintains that the trial court erred in holding that IC 9-1-4-3.5 (P.L. 71-1984) expressed a public policy change when P.L. 71-1984 was not to be effective until after the accident and the attempted rescission in this case. However, the trial court only used P.L.

71-1984 to "glean some idea as to the meaning" of P.L. 83-1982, which was not improper in this case. *See Seymour Nat. Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1226. When both versions of the statute are considered, it seems apparent that the purpose of the 1984 amendment was to clarify the legislative intent expressed in the 1982 version rather than to change it. To hold otherwise would be to presume that in the 1982 act the legislature merely intended owners to procure insurance policies for the day upon which they registered their vehicles.

When P.L. 83–1982 and P.L. 71–1984 are read *in pari materia,* it is clear that the legislature intended that there should be no certificate of registration outstanding without concurrent and continuous proof of financial responsibility. Proof of financial responsibility means proof of an ability to respond in damages. IC 9–2–1–15. Therefore, it is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery. *See Milwaukee Mut. Ins. Co. v. Butler* (S.D. Ind.1985), 615 F.Supp. 491, 495. Given this policy, it is difficult to reconcile the existence of a right to rescind an insurance policy so as to escape liability to a third party. *See Butler, supra* where the court stated in reference to IC 9–1–4–3.5 that "the statute itself is declaratory of public policy applicable to compulsory insurance and supersedes any rule of public policy which obtains from ordinary insurance law." 615 F.Supp. at 495.

This question has not been decided in Indiana since the legislature has spelled out the policy of this state in the statutes as discussed *supra.* However, other jurisdictions have resolved similar questions. In *Teeter v. Allstate Insurance Company* (1959), 9 A.D.2d 176, 192 N.Y.S.2d 610, New York held that the common law right of rescission ab initio for fraud did not survive the adoption of their Compulsory Insurance Law. The statute at issue, Section 93–b of the Vehicle and Traffic Laws, as added by L. 1956 Ch. 655, provided that no motor vehicle could be registered unless the application was accompanied by proof of financial responsibility. 192 N.Y.S.2d at 613. Section 93–c of that act provided that no policy of insurance could be terminated by cancellation or failure to renew unless ten days notice was given. Reading these two statutes together, the court held that the whole scheme of the statute would be frustrated if the insurance company were allowed, because of a hidden infirmity in the policy, to nullify it retroactively with respect to a period during which the company had led the public and authorities to believe that insurance coverage was in effect. 192 N.Y.S.2d at 617.

Michigan reached a similar result in *State Farm Mut. Auto. Ins. Co. v. Kurylowicz* (1976), 67 Mich.App. 568, 242 N.W.2d 530. In 1966, the Michigan Legislature amended the Michigan Insurance Code of 1956 by the enactment of 1966 P.A. 342 M.C.L.A. Section 500.3204, which limited the grounds an insurance company could use for cancellation of a policy. Prior to that amendment, the legislature had enacted the Motor Vehicle Accident Claims Act, M.C.L.A., Section 257.1101 et seq.; M.S.A. Section 9.2801 et seq. in order to provide compensation for citizens injured by uninsured tortfeasors. 242 N.W.2d at 533. The *Kurylowicz* court also considered Michigan's recently enacted "No Fault Act" which was not effective at the time the case was decided. The court held that in the light of this intervening legislation and the public policy which such legislation implies, an insurance company could not rescind and leave a third party without a recovery. 242 N.W.2d at 534.

Moreover, in *Sentry Indem. Co. v. Sharif* (1981), 248 Ga. 395, 282 S.E.2d 907, the Supreme Court of Georgia held that after the effective date of their "No Fault Act," an insurance policy providing basic third party and personal injury benefits could not be voided *ab initio* based upon misrepresentations that the insured made in applying for insurance. The court stated that the purpose of a compulsory insurance statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage. Thus, it was impossible to reconcile the existence of a right to rescind for fraud with the general scheme of compulsory insurance. 282 S.E.2d at 908.

We find the reasoning of these cases and the conclusions that they reach to be compelling. In fact, it appears to have been universally held that an insurer cannot on the ground of fraud or misrepresentation retrospectively avoid coverage under a compulsory or financial responsibility law

so as to escape liability to a third party. 7 Am.Jur.2d, *Automobile Insurance* Section 37, p. 493. *See also* 83 A.L.R.2d 1104 (1962). Therefore, in the light of the intervening legislation, specifically IC 9–1–4–3.-5, and the public policy which it implies, *Automobile Underwriters v. Stover, supra,* is no longer the law and American Underwriters may not rescind so as to escape liability to third parties.[4]

### II.

For the above reasons, American Underwriters also may not rescind as to FMC. FMC was a third party beneficiary of the contract as evidenced by the naming of FMC as "Loss Payee." *Russell v. Posey Cty. Dept. of Public Welfare* (1984), Ind. App., 471 N.E.2d 1209, 1211. Once a third party beneficiary accepts the contract, all are bound by it and cannot revoke or modify it to the detriment of the third party. *Id.* Here it is undisputed that after receiving notification that Williamson had obtained insurance and that FMC was identified as lienholder, FMC accepted this action. The appellant may not now revoke to the detriment of FMC.

### III.

Finally, American Underwriters maintains that only the owner of a motor vehicle is required to maintain proof of financial responsibility, and in this case FMC was the owner, not Williamson. However, "owner" as defined by IC 9–1–1–2(o) is "a person who holds legal title of a motor vehicle or any person renting or leasing a vehicle and having exclusive use thereof for a period longer than thirty (30) days...." In this case, it is not disputed that Williamson leased the vehicle from FMC for more than 30 days and that it was in his exclusive control. The trial court did not err in concluding that Williamson was required to maintain financial responsibility. The insurance contract in this case was in full force and effect on the date of the accident.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

4. No question has been presented as to whether American Underwriters might partially rescind as to any damages sustained directly by Williamson and covered by the policy. We do not here consider whether it could. We note, however, that the general rule against partial rescission appears subject to some exceptions. *See* 17 Am.Jur.2d, *Contracts* Section 488.