**Velma E. CARR, Plaintiff–Appellant,**

v.

**James F. RUNYAN, Elbert Starks, Jr., Linda K. Bloom, individually and as auditor of Allen County, Indiana, et al., Defendants–Appellees.**

No. 95–2088.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1995.

Decided July 8, 1996.

John P. Bullman (argued), Fort Wayne, IN, for Plaintiff–Appellant.

James F. Runyan, Fort Wayne, IN, pro se.

Phillip A. Renz, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, James M. Prickett, Fort Wayne, IN, for Elbert Starks, Jr.

Kim M. Spielman (argued), Stephen W. Adair, Beers, Mallers, Backs & Salin, Fort Wayne, IN, for Linda K. Bloom and Tim Berry.

Before LAY,* CUDAHY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Velma Carr contracted to sell a parcel of land, but before the buyer could make all the payments, he ran up a sizeable tax debt, and the county foreclosed on the property and sold it in a tax sale. When Carr filed a diversity action in federal district court to quiet title in the land and to recover damages under § 1983, the judge ordered a mediation so that the parties might discuss a settlement. Carr did not attend the mediation, but she arranged for her daughter to attend on her behalf. At the mediation, Carr's daughter and the defendants reached an accord as to settlement, but when Carr learned of the agreement, she refused to go along with its terms. After a hearing, the district court ruled that the settlement was enforceable because Carr's daughter possessed apparent authority to enter into a binding agreement, and we affirm.

## I. HISTORY

On May 7, 1987, Carr, a resident of Georgia, sold a plot of land located in Fort Wayne, Indiana, to Elbert Starks, Jr., for $45,000. The sale was on contract, meaning that Carr would retain title to the land until Starks satisfactorily completed all of his payments under the sale agreement. By the time Starks had made payments totaling roughly $22,000, however, he had accumulated a sizable property tax debt. Accordingly, the county auditor initiated a tax sale and

sold the property to James Runyan in September of 1992. After Starks did not exercise his right of redemption within the required period, the county auditor issued a final tax deed to Runyan for the property.

When Carr later learned of the sale, she brought a diversity action in federal district court, seeking to void Runyan's tax deed and quiet title in her name because, she claimed, she had not been properly notified of the tax sale. Additionally, she sought damages under 42 U.S.C. § 1983, arguing that by depriving her of her property without proper notice, the county auditor and treasurer had violated her constitutional rights to procedural due process, substantive due process, and the privileges and immunities of her Georgia citizenship.

At a preliminary pretrial conference on September 8, 1994, the district judge ordered the matter to be mediated in an attempt to encourage a voluntary settlement between the parties. The parties agreed on the appointment of John Theisen, a labor law attorney from Fort Wayne, to act as the mediator. The district court's order to mediate instructed:

> At the time so arranged, counsel, the parties, and the appropriate officers or representatives of the parties . . . who have full settlement authority shall be present in person at the [mediation] unless their personal presence is excused by leave of court in which event they shall be continuously and immediately available for consultation by telephone with their respective counsel, or the mediator(s).

Additionally, the district court's order required that "[t]he representatives in attendance should have the same level of responsibility and authority as one who would ordinarily be sent to a settlement conference conducted by the court."

The mediation was held at Theisen's office on October 25, 1994, and Carr was represented by her attorney, Mike Harmeyer. Carr did not attend the mediation personally, and

---

* The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

there is no explanation in the record for her absence. Although Carr never obtained leave of court excusing her failure to attend, she arranged instead for her daughter, Vivian Sarver, to attend the mediation with Harmeyer. According to Sarver's own testimony, Sarver went to the mediation to act on her mother's behalf. Immediately prior to the beginning of the mediation, Harmeyer spoke with Carr on the telephone, but neither Harmeyer nor Sarver spoke with Carr again until after the mediation had ended.

The mediation began at 1:00 P.M. and lasted six and a half hours, and during that time Harmeyer, Sarver, and the defendants and their counsel discussed various offers and counteroffers. Theisen testified that Sarver was active in these discussions. Near the end of the negotiation, the defendants proposed a settlement under which they would pay Carr $28,000 in exchange for her agreement to release her claim by transferring any and all interest she had in the property to Runyan. When Harmeyer discussed this offer with Sarver, she rejected it and asked him what he recommended. He recommended, and they subsequently proposed to the defendants, a settlement wherein Carr would receive $29,000 in exchange for her entire interest in the property. The defendants collectively agreed to this settlement counteroffer.

At that point, believing a settlement to have been reached, Theisen dictated the settlement agreement onto a cassette tape in the presence of the parties. Theisen began the dictation by noting that a settlement had been reached, and he outlined the terms of the agreement. Theisen then went around the table and individually asked each attorney, including Harmeyer, whether the dictated settlement terms accurately reflected the agreement approved by their clients, and the attorneys each responded in the affirmative. Neither Sarver nor any of the defendants present voiced opposition or disagreement to their attorney's representations. Theisen subsequently filed a report with the district court announcing that the parties had reached a settlement and detailing the terms of the agreement.

The night the mediation concluded, Sarver called her mother to tell her what had happened, but according to Sarver, Carr insisted that she wanted her house and did not want to settle for any amount of money. The next day, Sarver called Harmeyer and told him that her mother wanted the house. Apparently, however, Sarver did not clearly convey the import of this statement because Harmeyer continued to believe that a settlement had been reached.

A month later, Harmeyer had completed a joint stipulation for dismissal with prejudice, and he forwarded this document to counsel for the defendants, pursuant to the terms of the settlement agreement. But on December 19, 1994, Carr made it explicitly clear to Harmeyer that she would not agree to the settlement agreement reached at the mediation. Thus, on December 20, Harmeyer filed various motions with the district court requesting the court to reset the case for trial. The defendants objected, and a hearing was scheduled for February 13, 1995.

At the hearing, the court heard testimony from Sarver, Theisen, Harmeyer, and Carr's son, Charles Carr. Although Carr was present at the hearing, she did not testify. Immediately prior to the hearing, Harmeyer submitted a motion to withdraw appearance, but the district court decided to postpone ruling on this motion until after the issue of the settlement agreement's validity was resolved. On more than one occasion, the district court asked the Carrs if they wished to have a continuance so that they could obtain different counsel, but they refused.

Sarver testified that her understanding of the phone call between Carr and Harmeyer immediately preceding the mediation was that her mother would go along with whatever she (Sarver) thought best. However, in seeming contradiction to this statement, Sarver also explained that at the time of the hearing, she believed that no settlement agreement would be final until her mother was telephoned and had a chance to accept or reject the settlement. Finally, in contradiction to her statement that her mother was to approve any settlement agreement, Sarver testified that during the entire span of the litigation, her mother had maintained that

she only wanted to keep her house and did not want to settle for money. Charles Carr also testified to the fact that his mother had simply wanted to keep her house.

Harmeyer and Theisen each testified that they understood Sarver to have had full settlement authority during the mediation and that, after the mediation, they believed a valid settlement had been reached. Harmeyer, however, could not testify as to the substance of the conversation he had with Carr prior to the mediation due to the attorney-client privilege.

Following the hearing, the district court orally rendered its ruling, finding that Sarver had possessed apparent, if not actual, authority to settle the case on behalf of Carr. As a result, the court upheld the validity of the settlement agreement and entered a judgment dismissing Carr's claims with prejudice, as prescribed by the terms of the settlement. Within ten days of the entry of judgment, Carr filed a FED. R. CIV. P. 59 motion for a new trial and a FED. R. CIV. P. 60(b) motion to set aside the judgment, both of which the district court denied. Carr now appeals to this court, arguing (1) that the settlement agreement is unenforceable because neither Sarver nor Harmeyer had the authority to bind Carr to an agreement settling her claims against the defendants, and (2) that the district court erred in not granting a continuance prior to the hearing so that Carr could obtain different counsel.

## II. ANALYSIS

Given that the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, the exercise of that power is particularly appropriate for deferential review. *Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir.1995). Thus, in considering a district court's decision whether to enforce a settlement agreement, including its threshold determination of whether the parties actually entered into a valid and enforceable agreement, we will not reverse unless the lower court abused its discretion. *Id.* Under this standard, we do not ask whether we would have ruled as the district court did were the question before us in the first instance, but

rather whether under the circumstances the district court's decision was reasonable. *Antevski v. Volkswagenwerk Aktiengesellschaft,* 4 F.3d 537, 539–40 (7th Cir.1993).

A settlement agreement is merely a contract between the parties to the litigation, wherein generally the defendants promise some partial remedy in exchange for the plaintiff's promise to dismiss the case and release the defendants from any future liability for their conduct that formed the basis of the dispute. As such, the formation, construction, and enforceability of a settlement agreement is governed by local contract law. *Laserage Technology Corp. v. Laserage Lab., Inc.,* 972 F.2d 799, 802 (7th Cir.1992).

Under general principles of Indiana agency and contract law, a principal will be bound by a contract entered into by the principal's agent on his behalf only if the agent had actual or apparent authority to bind him, or if the principal subsequently ratifies the agreement. *Northern Assurance Co. of America v. Summers,* 17 F.3d 956, 960 (7th Cir.1994) (citing *Allegheny Mut. Casualty Co. v. Franklin,* 513 N.E.2d 658, 659 (Ind. Ct.App.1987)); *Beneficial Mortgage Co. v. Powers,* 550 N.E.2d 793, 796 (Ind.Ct.App. 1990). Actual authority exists where the principal has in fact authorized the agent to enter into such a contract on behalf of the principal. *Northern Assurance,* 17 F.3d at 960 (citing *Indiana Dept. of Pub. Welfare v. Chair Lance Serv., Inc.,* 523 N.E.2d 1373, 1377 (Ind.1988)). This authorization may be expressly conveyed orally or in writing, or it may be implied by actions of the principal that would lead a reasonable agent to believe that he possessed such authority. *Id.*

Apparent authority, on the other hand, exists where actions of the principal give the other contracting party the reasonable impression that the agent has authority to enter into an agreement on behalf of the principal. *Id.* at 962 (citing *Pepkowski v. Life of Ind. Ins. Co.,* 535 N.E.2d 1164, 1166–67 (Ind.1989)). In such cases, the agent need not have actual authority, nor even believe that he has actual authority, so long as the principal's actions cause the contracting third

party to reasonably believe that the agent has contracting authority. *Id.*

 Finally, even where an agent has neither actual nor apparent authority, a principal may be bound by a contract entered into by his agent if the principal subsequently ratifies the contract as one to which he is bound. *Beneficial Mortgage,* 550 N.E.2d at 796. As with actual authority, ratification may be express, where the principal overtly adopts the contract, or implied, where the principal both fails timely to repudiate, and accepts benefits under, the contract. *Id.* (citing cases).

 All the parties agree that Carr did not ratify the settlement agreement, either expressly or impliedly. Although there is some question as to whether Carr repudiated the agreement one day or two months after the mediation conference, there is no evidence in the record that she ever formally adopted the agreement or accepted any benefits under the terms of the settlement. Thus, the settlement is enforceable only if Sarver had actual or apparent authority to bind Carr to an agreement disposing of her claims for relief.

The evidence is mixed concerning whether Carr gave Sarver the actual authority to settle the case on her behalf. Harmeyer explained that after speaking with Carr prior to the mediation, he believed Sarver had actual settlement authority. Unfortunately, the record does not contain the specifics of the conversation because Harmeyer was precluded by the attorney-client privilege from divulging the contents of the discussion, while Carr declined to take the stand at all. Sarver testified that her understanding of Harmeyer's phone conversation with Carr was that Carr would agree to whatever Sarver thought best in the mediation. However, Sarver also stated her contradictory belief that any settlement would be conditioned on Carr's final approval. Supposedly, Sarver believed this because her mother had always simply wanted the house and did not want to settle for any amount of money. Yet, the facts that Carr was willing to sell the house to Stark in 1987 and that she allowed Sarver to participate in mediation negotiations designed to reach a settlement disprove the contention that, due to some emotional attachment, she wanted only to keep the house.

Nevertheless, we need not decide the issue of whether Carr gave Sarver actual authority to settle her case because the facts are clear that Sarver had *apparent* authority. Apparent authority exists where the principal's actions lead the contracting third party to reasonably believe that the agent has authority to bind the principal. *Northern Assurance,* 17 F.3d at 962. Here, the order to mediate clearly instructed that the parties and the parties' representatives "who have full settlement authority" were required to attend the mediation unless they obtained leave of court. Carr did not procure the court's permission for her absence, but instead arranged for Sarver to appear on her behalf. Due to Carr's actions in this respect, Theisen and the defendants were reasonable in believing that Sarver had authority to settle on Carr's behalf. Perhaps the defendants' beliefs would have no longer been reasonable had Sarver expressly disclaimed her authority, but she did not. On the contrary, the record indicates that she actively participated in the negotiations, including the ultimately accepted counteroffer, and that she did not object or voice any qualification when the parties dictated to cassette tape the terms of the agreed-upon settlement, nor did she ever ask to leave the meeting and call her mother. Thus, we cannot find that the district court abused its discretion in enforcing the settlement agreement and dismissing Carr's claims, pursuant to the terms of the settlement.

 Carr's second argument on appeal is that the district court erred in failing to grant a continuance before the enforceability hearing so that she could obtain different counsel. Although we agree that granting a continuance would have been advisable under the circumstances of this case (Harmeyer had requested withdrawal due to a perceived conflict of interest), the district court asked Carr and her son on more than one occasion if they wanted a continuance, and each time they declined. Carr cannot now maintain that the district court committed reversible

error by failing to ignore her refusals and grant a continuance *sua sponte*.

Finally, we do not address Carr's argument that the settlement is unenforceable because it was not filed with the clerk of the district court. Besides being wholly meritless under a proper reading of IND. CODE § 34–1'5, the argument is raised for the first time on appeal and is therefore waived.

The judgment of the district court is AF-FIRMED.