**STATE SECURITY INSURANCE COMPANY, Appellant (Third-Party Defendant Below),**

v.

**Joan and Lawrence OTTINGER, Appellees (Plaintiffs Below),**

v.

**Robert E. BROWN (Defendant Below),**

**Richard E. DANIEL, d/b/a Mr. Insurance of Indiana (Defendant Cross-Claimant and Third-Party Plaintiff Below),**

v.

**STATE SECURITY INSURANCE COMPANY, (Defendant Cross-Defendant Below),**

**Insurance Brokers of Indiana, (Third-Party Defendant Below).**

No. 2–284A52

Court of Appeals of Indiana, Second District.

Dec. 30, 1985.

ably be foreseen by a prudent businessman pri- or to the occurrence."

Richard H. Crokin, Indianapolis, for appellant.

Frederick R. Hovde, Indianapolis, for Joan and Lawrence Ottinger.

Louis H. Borgmann, Indianapolis, for Robert E. Brown.

SHIELDS, Judge.

State Security Insurance Company (State Security) appeals the judgment entered in favor of Robert Brown after a trial to the court. The single issue for our review is whether the trial court erred in concluding Brown's 1971 International Travelall was insured by State Security at the time of Brown's accident.

We affirm.

## Facts

Brown purchased an inoperable 1971 International Travelall on November 30, 1978, repaired it, and on December 11, 1978, transferred title to his name and also transferred license plates from another vehicle. The Travelall replaced a 1966 Chevrolet van which had become inoperable in early November. The van was insured by State Security for the period of August 8, 1978 to February 12, 1979 under a policy Brown had purchased through insurance agent Richard Daniel. Brown called Daniel's office on December 20, 1978 to transfer liability coverage from the van to the Travelall. He talked with Coleen Pennell who took the serial number for the Travelall and told Brown the transfer would be taken care of. However, Daniel's office failed to notify either State Security or its licensed agent, Insurance Brokers of Indiana, of Brown's transfer request.

On January 9, 1979, Brown, while driving the Travelall, was involved in an automobile accident with Joan Ottinger. Brown reported the accident to Daniel's office who notified Insurance Brokers of Indiana who in turn notified State Security.

On March 12, 1979, State Security notified Brown by letter that it did not consider itself obligated to cover the accident. The letter stated State Security "did not have the benefit of formal notice of your acquisition of the aforesaid, 1971 International Travelall until February 15, 1979...." Record at 91. The letter went on to claim the policy provisions required notice within thirty (30) days of the disposition, replacement, or addition of an automobile (defined to include vans and small trucks).

Brown was sued for personal injuries resulting from the accident. Brown then brought a third-party action against Daniel and State Security. After judgment was entered against Brown in the primary case, Brown's third-party suit was tried. State Security appeals a judgment in Brown's favor in the third-party action.

## Discussion

Interpretation and construction of insurance policy provisions is a function for the courts, at trial and appeal. Therefore, our standard of review on the interpretation aspect of the issue on appeal is essentially the same as that employed by the trial court. As a general rule, insurance policies are subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. The Home Insurance Co.*, 482 N.E.2d 467 (Ind.1985). Hence, if the policy language is clear and unambiguous, absent a provision contrary to public policy, the policy language should be given its plain and ordinary meaning. *Id.* Further, an ambiguity exists only when reasonably intelligent persons upon reading the policy

would honestly differ as to its meaning and not merely because a controversy exists as to the meaning of certain provisions. *Id.*

■ However, insofar as the issue also involves an issue of fact, we accept any unchallenged factual determinations in the trial court's special findings of fact, and any challenged factual determinations unless the challenged findings are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). Further, when the trial court, on its own motion, enters special findings of fact, as in the instant case, we affirm the trial court's judgment even in the absence of specially found facts on any theory that does not conflict with a specially found fact. *Best v. Best,* 470 N.E.2d 84 (Ind.App.1984).

■ Initially, we observe the policy in issue provided automatic coverage by the terms of a provision contained in the liability portion of the policy, which reads:

### "PART I—LIABILITY

*Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages ... arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile....
*Definitions.* Under Part 1....
*'Owned automobile'* (a) means a private passenger, farm or utility automobile or trailer owned by the named insured and described in this policy, and includes a temporary substitute automobile *(b) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided (1) it replaces an owned automobile as defined in (a) above,* or (2) the company insures all private passenger, farm and utility auto-

mobiles owned by the insured on the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or (c) a temporary substitute automobile...."

Record at 48.

By defining the phrase "owned automobile" to include an automobile other than that described in the policy, the subject policy includes what is commonly described as an "automatic coverage" clause. 7 Blashfield, Automobile Law and Practice § 316.3 (3rd Ed.1966).

One purpose of the so-called "automatic coverage" clause as found in Part I of the subject policy is to afford the insured owner continuous coverage upon acquisition of a replacement automobile during the life of the policy. 12 Anderson & Couch, Insurance § 45.184 (2d ed.1964). Ownership of the Travelall was acquired by Brown during the policy period as a replacement for an owned and listed automobile.[1] Therefore, by the plain wording of the subject policy, Brown's 1971 International Travelall is an "owned vehicle" within the terms of Part I of the policy. Part I of the subject policy, which affords liability coverage, fails to impose any obligation upon the insured to notify the insurer of a change in vehicles. In the absence of any obligation to notify the insurer, the automatic insurance provision in Part I extends liability coverage to a replacement automobile for the life of the policy.

State Security, however, claims a duty of notice is imposed by another portion of the policy, entitled "CONDITIONS", found on the backside of the last page of the policy. Item 2 within the "CONDITIONS" section reads as follows:

"2. *Premium.* If the named insured disposes of or replaces a private passenger, farm or utility automobile or a trail-

---

**1.** Paragraph 5 of the trial court's Judgment Entry reads, in part:
"The 1966 Chevrolet Van Automobile became inoperable. On December 11, 1978 Third-Party Plaintiff acquired title to a 1971 International Truck as a replacement for the 1966 Chevrolet Van automobile...." Record at 205.

In its motion to correct error, State Security only challenges the trial court's finding Brown acquired title on December 11, 1978. It does not challenge the finding Brown acquired the 1971 International Travelall as a replacement for the 1966 Chevrolet van.

er, he shall inform the company within 30 days of such change. If the named insured acquires ownership of an additional private passenger, farm or utility automobile or a trailer, he shall inform the company within thirty days following the date of its delivery. Any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof.

Record at 51.

Relying on this premium condition and an "Action Against Company" condition contained in Item 6[2] of the "Conditions" section of the policy, State Security argues Brown failed to comply with the notice condition precedent to extending coverage beyond the thirty (30) day automatic coverage period. Hence, State Security claims Brown's 1971 International Travelall was not an insured vehicle at the time of the subject accident because the accident occurred beyond the thirty (30) day automatic coverage period.

Item 2 imposes a duty upon Brown to notify State Security concerning the replacement Travelall. However, State Security erroneously assumes the duty commenced upon Brown's acquiring *ownership* of the Travelall. Item 2 imposes the duty "within 30 days of [the] change."[3] The policy could have pinpointed the event of change in any number of ways such as the date ownership of the replacement vehicle was acquired or the date delivery of the replacement vehicle occurred. However,·

the policy is silent. Therefore, the critical issue is when the change occurred.

Implicit in the concept of change in the context of a replacement vehicle is the total substitution of one vehicle for another.[4] Frequently, the question of when the change occurs is simplified by the trade-in or sale of the replaced vehicle simultaneously with the acquisition of the replacement vehicle. In that scenario the event of change is apparent. However, when the replacement involves "junking" the replaced vehicle or holding the replaced vehicle for later sale, the issue of change involves a determination of the insured's intent to replace. Necessarily, there· is room for diversity in the factual determination. Accordingly, our review is standard. We do not reweigh the evidence nor the credibility of the witnesses. Further, we consider the evidence and the logical inferences therefrom most favorable to the judgment.

In the instant case, the evidence reasonably supports the determination the change occurred on December 11, 1978. Brown testified that when the van quit running in early November 1978, the engine was blown and the van inoperable. Accordingly, he parked the vehicle at his home and started scrapping it. Brown then acquired ownership of the Travelall on November 30, 1978 but because it required numerous repairs before it could be driven, it was towed to a garage. On December 11, 1978, when Brown completed the repairs, he acquired the title and registered the Travelall.

Thus, although the Travelall's previous owner signed the title over to Brown on

2. Item 6 within the "Conditions" section reads as follows:

"*Action Against Company—Part I.* No action shall lie against the company unless as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy...."

Record at 52.

3. The use of the word "change" distinguishes the instant case from *Stockberger v. Meridian Mutual Insurance Co.,* 182 Ind.App. 566, 395 N.E.2d 1272 (1979), a case heavily relied upon by State Security. In *Stockberger,* the issue was whether

the vehicle involved in an accident was newly acquired. A newly acquired vehicle was defined as a vehicle acquired within the policy period or during the last thirty (30) days of the previous policy period and about which notice to the company was given within thirty (30) days of its *acquisition.* Thus, the issue was when the Stockberger vehicle was acquired.

4. The parties do not contend both the Travelall and the 1966 Chevrolet van were covered during the thirty (30) day period or that both vehicles were interchangeably covered during that period.

November 30, 1978, Brown did not acquire a new title in his name until December 11, 1978 when he submitted the old title, along with a request to transfer the van's license plates to the Travelall, to the appropriate license authorities.[5]

Inasmuch as December 11, 1978 is the date on which the Travelall was able to perform the functions previously provided by the van, i.e., operable and legally licensed, the evidence supports the trial court's judgment holding State Security liable for coverage. The accident in question occurred on January 9, 1979, within thirty (30) days of December 11, 1978, the date of the change. The time allowed under Item 2 of the Conditions section had not yet expired and, accordingly, Brown was not "out-of-compliance" with Item 6. Therefore, on the date of the accident, the Travelall was an insured vehicle under the automatic coverage clause in Part I.

Judgment affirmed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

**5.** The trial court's finding that Brown acquired title to the Travelall on December 11, 1978 is not clearly erroneous because the finding is reasonably susceptible to describing title in the sense of a document showing title in Brown.