MOTORISTS MUTUAL INSURANCE
COMPANY, Appellant–Plaintiff,

v.

Lowell D. MORRIS, Jr. United Farm Bureau Mutual Insurance Company Billy F. McNamara, Freda Steelman, Appellees–Defendants.

No. 89A01–9502–CV–48.

Court of Appeals of Indiana.

Aug. 22, 1995.

William B. Keaton, Keaton and Keaton, P.C., Rushville, for appellant.

James H. Austen, Starr Austen Tribbett & Myers, Logansport, for appellees.

## OPINION

ROBERTSON, Judge.

Motorists Mutual Insurance Company [Motorists] appeals the partial summary judgment entered in favor of United Farm Bureau Mutual Insurance Company [Farm Bureau] on Farm Bureau's claim of subrogation to the rights of its insured, Billy F. McNamara, against Lowell D. Morris, Jr., who had obtained an automobile insurance policy from Motorists by fraud. We reverse.

## FACTS

The facts are entirely undisputed. The case was submitted on a stipulated statement of facts. On April 10, 1992, Morris applied for a policy of automobile insurance with Motorists. In this application, Morris made false material representations which included the failure to disclose that he had been involved in an automobile accident approximately two hours before his application, that his operator's license had been suspended on at least three separate occasions, and that he had been convicted of several traffic violations. Had Morris disclosed this information, Motorists would not have issued its policy of insurance to Morris. Based on Morris' misrepresentations, Motorists issued Morris a policy of automobile insurance that same day, April 10, 1992.

Eight days later, on April 18, 1992, Morris collided his automobile into one owned and driven by Billy F. McNamara. McNamara and his passenger, Freda Steelman, suffered personal injuries in the accident. McNamara owned an automobile insurance policy issued by Farm Bureau with uninsured/underinsured motorist coverage.

McNamara and Steelman asserted their claims against Morris. Motorists refused to honor these claims on the basis that Morris had obtained the policy through fraud. Farm Bureau, under the uninsured motorist provisions of its policy, paid McNamara and

Steelman approximately $14,000.00 in exchange for a release of their claims. By making this payment, Farm Bureau has become subrogated to the rights of McNamara under the terms of its policy.

■ Motorists brought the instant action for declaratory judgment to rescind (ab initio/from the beginning) the policy of insurance issued to Morris and made Farm Bureau a co-defendant. Farm Bureau filed a counterclaim for declaratory judgment against Motorists and a cross-claim against Morris seeking to recover the $14,000.00 under its right of subrogation. Motorists and Farm Bureau filed cross-motions for summary judgment.

The trial court granted partial summary judgment in favor of Farm Bureau finding that Motorists could not rescind the insurance policy issued to Morris and, thus, Motorists must pay Farm Bureau the $14,000.00 claim of subrogation.

## DECISION

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Great Lakes Chemical Corp. v. International Surplus Lines Insurance Co.* (1994), Ind.App., 638 N.E.2d 847, 849, *trans. denied.* On the review of summary judgment proceedings where there is no factual dispute, we determine whether the trial court correctly applied the law. *Laux v. Chopin Land Associates, Inc.* (1993), Ind.App., 615 N.E.2d 902, 905, *trans. denied.* When the evidence is undisputed, as in the case at bar, and there are no unresolved facts to be determined, it is appropriate for the appellate court to determine as a matter of law that summary judgment was rendered for the wrong party. *Indiana Department of Insurance v. Zenith Re–Insurance Company* (1992), Ind., 596 N.E.2d 228, 229.

In 1971, we held that a policy of automobile insurance was voidable at the insurance company's option where the insured had misrepresented a fact material to the risk. *Automobile Underwriters, Inc. v. Stover* (1971), 148 Ind.App. 555, 268 N.E.2d 114, 115–116,

*trans. denied.* That is, where the applicant's misrepresentation at the time of application could reasonably influence the insurer in deciding whether or not it should reject or accept the risk, the policy of insurance is voidable at the insurance company's option. *Id.* 268 N.E.2d at 115.

In the 1980s, our General Assembly enacted the Financial Responsibility Act, now Ind. Code 9–25, which requires proof of financial responsibility before a vehicle may be registered or operated on a public highway. I.C. 9–25–4–1. We have interpreted the policy to be advanced by these statutes as follows:

Therefore, it is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery.

*American Underwriters Group v. Williamson* (1986), Ind.App., 496 N.E.2d 807, 810. Based upon the adoption of the Financial Responsibility Act, we expressly overruled *Stover,* 268 N.E.2d 114, and held that an insurer may not rescind a policy of insurance on the ground of fraud or misrepresentation in procuring the insurance policy so as to escape liability to third persons. *Williamson,* 496 N.E.2d at 810, 811.

In *City of Gary v. Allstate Insurance Company* (1993), Ind., 612 N.E.2d 115, 117, our supreme court described the interrelationship between the financial responsibility statutes and the statutory requirement, imposed by Ind.Code 27–7–5–2, that insurance companies make uninsured/underinsured motorist coverage available to persons purchasing automobile insurance policies. First, the Court reiterated the established policy of financial responsibility statutes, as follows:

The purpose of Indiana's financial responsibility law is to compel motorists to make provisions for the protection of other drivers on the road so that a driver may be protected from damages which might be inflicted on him by another.

612 N.E.2d at 117. However, the Court went on to note that:

Although Indiana may be referred to as a compulsory financial responsibility state, a victim is not guaranteed compensation in every automobile accident.

*Id.* The Court then explained that the policy advanced by the financial responsibility statutes is bolstered by the requirement under I.C. 27–7–5–2 that insurance companies offer uninsured/underinsured motorists coverage, stating:

> On the other hand, the purpose of uninsured motorist coverage is to put the injured party in the place they would have been if the other person had complied with the financial responsibility law.

*Id.* Thus, the two statutory schemes work together to better *insure* that persons injured in automobile accidents receive compensation.

We explored the purpose of the financial responsibility law further in *Allstate v. United Farm Bureau Mutual Insurance Company* (1993), Ind.App., 618 N.E.2d 31, 35. In *Allstate,* we noted:

> that the purpose behind Indiana's fiscal responsibility statutes is to provide protection against liability for damages for death or injury to persons or property resulting from negligence in the operation of motor vehicles—*not to protect insurance companies from liability.*

*Id.* at 35 (Emphasis added).

In the present case, the policy advanced by our General Assembly by both the financial responsibility statutes, I.C. 9–25, and the statutory requirement that insurance companies offer uninsured/underinsured motorist coverage, I.C. 27–7–5–2, has been fulfilled. The persons injured in the automobile accident, Billy F. McNamara and Freda Steelman, have been compensated for their injuries by insurance. Accordingly, we hold that, 1) because the legislature's policy of compensating accident victims has been upheld, and 2) because the real dispute here is between insurance companies who are not entitled to protection under the statutes involved, the *Williamson,* 496 N.E.2d 807, decision, based upon the policy of the financial responsibility law, does not control the disposition of this case. Instead, the most agreeable disposition of this case requires that we consider the policy as advanced by both statutory schemes (the financial responsibility law and the uninsured motorist provision) as well as traditional legal and equitable principles as they apply to insurance policies.

■ Generally, insurance is a contract of indemnity through which a party undertakes an obligation to compensate another against loss arising from certain specified contingencies or perils by shifting the risk of loss from the insured to the insurer. *City of Gary,* 612 N.E.2d at 118. As noted above, before the advent of the financial responsibility law, we held that an insurance company may properly rescind an automobile insurance contract where the applicant has misrepresented facts which would reasonably induce the insurer to accept the risk posed by the motorist. *Stover,* 268 N.E.2d at 115. Moreover, our legislature has recognized the equitable principle advanced in *Stover* by permitting insurance companies to cancel an insurance policy procured by fraud without advance notice within the first sixty days after it has been issued. I.C. 27–7–6–4 & 5.

Morris, who had a very poor driving record, obtained the Motorists policy by fraudulently misrepresenting his driving record. It is undisputed that Motorists had not known the risk presented by issuing Morris automobile insurance and that, had the true state of Morris' driving record been disclosed, Motorists would not have issued the policy. A mere eight days later, Morris caused the collision which injured McNamara and Steelman. Under the particular egregious circumstances presented here, Morris' procurement of automobile insurance through fraud cannot be appropriately considered as compliance with the financial responsibility law.

On the other hand, Farm Bureau had issued McNamara an uninsured motorist policy with the knowledge of the risks posed by uninsured motorists. Farm Bureau had been compensated by the payment of a premium for taking on that known risk.

Accordingly, we hold that, under the present circumstances, Motorists may properly rescind (ab initio) Morris' contract of insurance such that, at the time of the collision, Morris was, in effect, an uninsured motorist—the precise risk insured under McNamara's Farm Bureau policy. Our holding is supported by the policy advanced by the statutory requirement that insurance compa-

nies offer uninsured/underinsured motorist coverage—that persons injured in automobile accidents by drivers who have failed to comply with the financial responsibility law receive compensation. Therefore, we reverse and remand with instructions that the trial court enter judgment in favor of Motorists.

Judgment reversed.

NAJAM and GARRARD, JJ., concur.