The COLONIAL PENN INSURANCE COMPANY, Appellant–Plaintiff,

v.

Dorothy GUZOREK, Donald Guzorek, Marianne Van Winkle, Marsha Pocius and John Pocius, Appellees–Defendants,

and

Illinois Farmers Ins. Co., Appellee–Intervenor.

No. 45A03–9511–CV–369.

Court of Appeals of Indiana.

Aug. 21, 1996.

Terence M. Austgen, Elizabeth M. Bezak, Singleton, Crist, Patterson & Austgen, Munster, for Appellant.

James R. Bielefeld, Crown Point, Kristin A. Mulholland, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellee.

## OPINION

GARRARD, Judge.

This declaratory judgment action requires us to examine various provisions of an automobile insurance policy provided by Colonial Penn Insurance Company to Dorothy Guzorek. The trial court below denied Colonial Penn's motion for summary judgment and granted Guzorek's motion for summary judgment.

### FACTS

On October 20, 1992, Donald Guzorek, Dorothy Guzorek's husband, was involved in an automobile accident with two other vehicles, one driven by Marsha Pocius and the other driven by Marianne Van Winkle. On the day of the accident, Colonial Penn had a policy for automobile insurance identifying Dorothy Guzorek as the named insured. This policy was issued in April of 1990 after Guzorek filled out an insurance rate request form. The form asked for the names of all driver's licensed operators in the household of the applicant, and Guzorek listed only her name on the form. While Donald Guzorek lived with his wife, his driver's license was suspended as a result of at least two prior convictions for driving while intoxicated. On a "personalized quotation/enrollment form," Guzorek was asked to list all customary operators of the vehicles, and she failed to list her husband, although he did drive several times a week.

Colonial Penn issued a policy on April 27, 1990, identifying Guzorek as the named insured.[1] Colonial Penn continued to renew Guzorek's policy over the next two years. In September of 1992, a 1980 Buick Skylark was listed as an insured vehicle under the policy. On September 22, 1992, Guzorek purchased a 1978 Buick LeSabre. Twenty-nine days later, on October 20, 1992, Donald Guzorek was driving the 1978 Buick LeSabre home from the Beer Barrel Tavern when he was

---

1. Under the terms of the policy, a spouse living in the same household as the policyholder is considered a policyholder.

involved in an automobile accident involving two other vehicles. Guzorek did not notify Colonial Penn of the existence of the 1978 Buick LeSabre, although her intent was to replace the 1980 Buick Skylark with the 1978 Buick LeSabre when her premium was due for renewal of the policy on October 27, 1992.

After the accident, Guzorek did not think that there was any coverage under the Colonial Penn policy for either her husband or for the 1978 Buick LeSabre. Both Van Winkle and Pocius brought actions against Donald Guzorek. Guzorek did not notify Colonial Penn of these lawsuits; rather, Colonial Penn first learned of the accident from Van Winkle's attorney. Colonial Penn did not learn of the Pocius lawsuit until after a default judgment had been entered against Donald Guzorek.[2] Guzorek did not consider the possibility of Colonial Penn providing coverage for the accident until the attorney representing Pocius raised the issue.

Colonial Penn filed the present complaint for declaratory judgment on April 7, 1994. Illinois Farmers Insurance Company, which had issued policies to both Van Winkle and Pocius including uninsured motorist coverage, was allowed to intervene in the present action. Pocius, Colonial Penn and Guzorek all filed motions for summary judgment. The trial court entered the following order:

> The accident herein occurred on October 20, 1992, while Plaintiff had a valid insurance policy in effect with Dorothy Guzorek. Mrs. Guzorek purchased a new car on September 22, 1992, and under the policy was given 30 days to notify Colonial that she had either replaced an already insured car or bought an additional car for the purpose of inclusion in the policy. The 30 days had not expired at the time of the accident[,] and the Court finds the additional car was covered by the terms of the policy.
>
> . . . .
>
> Defendant Dorothy Guzorek failed to notify Colonial of the accident assuming that Donald was not covered under her policy. The application for the policy indicated that Dorothy Guzorek's spouse, Donald

Guzorek, had no driver's license; but Donald was not excluded, and the language included spousal coverage. The Court believes that the record establishes that no prejudice was caused by these delays in notice by the affidavits filed in this cause. (R. 236–37). The court denied Colonial Penn's motion for summary judgment and granted summary judgment to the Guzoreks, finding that they are entitled to coverage under the policy.

## ISSUES AND DISCUSSION

Colonial Penn raises three issues for our review:

I. Whether the trial court erred because the policy issued to Guzorek was void as a result of omissions and material misrepresentations on the original policy application.

II. Whether the trial court erred because the vehicle operated by Donald Guzorek was not a covered vehicle under the policy.

III. Whether the trial court erred because Colonial Penn was prejudiced by Guzorek's failure to give notice of the accident.

## ISSUE I

■ Colonial Penn first argues that it was entitled to void the policy issued to Guzorek based upon her failure to reveal her husband's driving history on the insurance application.

■ Summary judgment is properly granted only when the evidentiary matter designated to the trial court shows that there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Briggs v. Finley*, 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied.* The burden is on the moving party to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Landau v. Bailey*, 629 N.E.2d 264, 266 (Ind.Ct.App.1994), *reh'g denied.* If the movant sustains this burden, the opponent may not rest on the allegations of the pleadings, but must set forth specific facts showing that there is a genuine issue

---

2. The default judgment was set aside by agreement of the parties.

for trial. *Id.* On appeal, we are bound by the same standard as the trial court and we must consider all matters which were designated at the summary judgment stage in the light most favorable to the nonmoving party. *Schooley v. Ingersoll Rand, Inc.,* 631 N.E.2d 932, 936 (Ind.Ct.App.1994).

In 1971, we held that an automobile insurer may rescind a policy where the insured had misrepresented a fact material to the risk. *Automobile Underwriters, Inc. v. Stover,* 148 Ind.App. 555, 268 N.E.2d 114, 115–16 (1971). However, upon the passage of the Financial Responsibility Act, requiring proof of financial responsibility before a vehicle may be registered or operated on a public highway, we revisited this issue in *American Underwriters Group, Inc. v. Williamson,* 496 N.E.2d 807 (Ind.Ct.App.1986). In *Williamson,* we expressly overruled *Stover,* concluding that the legislature's announced policy of providing a source of recovery to those who suffer loss due to an automobile accident could not be reconciled with the existence of a right to rescind an insurance policy so as to escape liability to a third party. *Id.* at 810. We further examined this issue in *Motorists Mut. Ins. Co. v. Morris,* 654 N.E.2d 861 (Ind.Ct.App.1995). In *Morris,* as in the case before us, the injured third parties owned policies providing uninsured/underinsured motorist coverage.[3] Thus, we held that "1) because the legislature's policy of compensating accident victims has been upheld, and 2) because the real dispute here is between insurance companies who are not entitled to protection under the statutes involved, the *Williamson* ... decision, based upon the policy of the financial responsibility law, does not control the disposition of this case." *Id.* at 863. The court went on to hold that the insurance company could rescind the policy on the basis that the insured had misrepresented facts which would reasonably induce the insurer to accept the risk posed by the motorist. *Id.* Thus, the insured became an uninsured motorist—the precise risk for which the victim's policy insured. *Id.*

The insurance rate request form filled out by Guzorek does not list her husband as a driver. However, the application only asks for "driver's licensed operators in the household." (R. 123). Thus, this application does not seem to indicate any misrepresentations. However, on the personalized quotation/enrollment form, Guzorek failed to list her husband as a "customary operator." (R. 126). Donald's deposition testimony clearly reveals that he was a regular driver, despite his suspended license. Thus, we conclude that the designated evidence establishes that Guzorek misrepresented facts which are material to the risk involved.

However, our inquiry does not end here. Guzorek argues that Colonial Penn was placed on inquiry notice regarding her husband's driving record as a result of a telephone survey taken on behalf of Colonial Penn approximately one year after the issuance of the policy. The document produced by the survey company lists Donald Guzorek as a driver but further states that Donald did not have a driver's license. (R. 181). The document also reveals that "sp.," which is indicated on the form to stand for Donald Guzorek (presumably as "spouse"), drives one vehicle six to seven thousand miles annually.

An insurance company has no right to rescind a policy where it has knowledge of the facts or where it has sufficient information which would cause a reasonably prudent man to inquire further. *Johnson v. Payne,* 549 N.E.2d 48, 51 (Ind.Ct.App.1990), *trans. denied; State Farm Mut. Auto. Ins. Co. v. Price,* 181 Ind.App. 258, 396 N.E.2d 134, 137 (1979). Where an insurance company or its agent has knowledge which would be sufficient to lead a prudent man to inquire about the matter, when the truth could have been ascertained conveniently, such knowledge constitutes notice of whatever the inquiry would have discovered and will be regarded as knowledge of the facts. *Price,* 396 N.E.2d

---

3. In *Morris,* the uninsured/underinsured carrier had already paid its insureds and was proceeding under subrogation rights. While in the case be-

fore us it appears that payment has not yet been rendered, there appears to be no dispute that all

at 137.[4]

Colonial Penn strongly contends that the duty of inquiry notice applies only at the time of application, and thus concludes that, despite the information contained in the telephone survey, it had no duty to inquire further and was entitled to rely upon the application. Colonial Penn cites no authority for this position, and we find its argument unpersuasive. The purpose of the inquiry notice doctrine is to prevent an insurance company from failing to act upon information which would entitle it to rescind a policy until its insured attempts to enforce the policy, thereby inducing its insured to rely upon the belief that he or she had valid insurance. Our conclusion that the duty of inquiry notice applies whenever an insurance company receives information sufficient to put a reasonably prudent person on notice is further supported by Ind.Code § 27–7–6–4, which lists the authorized reasons for cancellation of an automobile insurance policy, including:

> (b) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under the policy has been denied or has been under suspension or revocation during the policy period or the existence of one (1) or more grounds for such denial, suspension, or revocation has become known.
>
> . . . .
>
> (d) Fraud, willful misrepresentation, or concealment on the part of any insured in respect to any material fact or circumstance relating to the issuance or continuance of the policy or relating to a loss.

I.C. § 27–7–6–4(b), (d). This statute clearly contemplates insurers obtaining information which would entitle them to cancel a policy, and the statute does not limit its terms to information provided upon an application.

We conclude that the information contained in the telephone survey form, indicating that Donald Guzorek was a regular driver, yet one who did not have a driver's license, was sufficient to put a reasonably prudent person on notice. Thus, Colonial Penn is not entitled to rescind the policy based upon any misrepresentations made on the application for insurance.

## ISSUE II

Colonial Penn next argues that the car involved in the accident, a 1978 Buick LeSabre, was not a covered automobile under the policy.

The Colonial Penn policy contained the following provisions regarding the replacement or addition of an automobile to the policy:

### Replacing an Auto

*You* may replace a *listed auto* with another *private passenger auto*, during the policy period. If *You* do, *We*'ll automatically consider the replacement to be listed. The coverages *You* bought for your former *auto* will apply to the replacement. . . .

### Adding an Auto

*You* may get an additional *private passenger auto* or *utility truck* during the policy period. If *We* insure all your *private passenger autos* and *utility trucks* at the time *You* get the additional auto or truck, *We*'ll automatically consider it to be listed on your Declarations Page. It will have the same coverages as your other *autos*. For the coverages to apply, however, *You* must notify us within 30 days after getting the vehicle or within the policy period and pay an additional premium from the date *You* got it. . . .

(R. 16, 27–28) (emphasis in original).

 The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Great Lakes Chemical Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind.Ct.App.1994), *reh'g denied.* When interpreting an insurance poli-

---

of the injured third parties do have uninsured/underinsured coverage through Illinois Farmers.

**4.** The requirement of reasonable prudence will not be carried to the extent that the law will ignore an intentional fraud. *Price*, 396 N.E.2d at 137. However, Colonial Penn does not argue that Guzorek committed an intentional fraud, so we do not address this issue.

cy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* An unambiguous policy must be enforced according to its terms, even those terms which limit the insurer's liability. *Selleck v. Westfield Ins. Co.,* 617 N.E.2d 968, 970 (Ind.Ct.App.1993), *trans. denied.* However, if the language is ambiguous, the policy should be construed in favor of the insured to further the policy's basic purpose of indemnity. *Great Lakes,* 638 N.E.2d at 850. An ambiguity exists if the policy is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id.*

First, we address whether the Buick LeSabre qualifies as a replacement vehicle under the policy. As of the date of the accident, the evidence designated to the trial court demonstrates that the vehicle was not a replacement vehicle. On the day of the accident, Donald Guzorek drove both the LeSabre and the Skylark. Further, Dorothy Guzorek indicated in her affidavit that she did not intend to replace the Skylark with the LeSabre until her next premium for renewal was due, on October 27, 1992. Thus, the Skylark may not be considered a replacement vehicle under the policy.

We next address whether the Skylark qualifies as an added vehicle. A policy provision regarding a newly acquired vehicle is commonly referred to as an "automatic coverage" clause. The purpose of such clauses is to afford the insured owner continuous coverage upon acquisition of an additional or replacement vehicle during the life of the policy. *State Sec. Ins. Co. v. Ottinger,* 487 N.E.2d 446, 448 (Ind.Ct.App.1985). The policy before us contains the common requirement that the insured must notify the insurer of any additional car within thirty days. When an accident occurs outside this thirty-day window and no notice has been served, it is clear that coverage is not available. *See Stockberger v. Meridian Mutual Ins. Co.,* 182 Ind.App. 566, 395 N.E.2d 1272 (1979) (coverage for accident occurring outside thirty day period barred due to failure to comply with notice requirement).

However, here the accident occurred within the thirty day period. Thus, the question before us is whether coverage is automatic during the thirty day period, regardless of whether notice is given, or whether notice is required in order for coverage to apply during this period. The majority of jurisdictions addressing this question have found that coverage exists for an accident occurring within the thirty days, regardless of whether notice is received within the thirty day period. *See Daniels v. State Farm Mut. Auto. Ins. Co.,* 177 Ariz. 340, 868 P.2d 353 (1994); *Georgia Mut. Ins. Co. v. Criterion Ins. Co.,* 131 Ga. App. 339, 206 S.E.2d 88 (1974) (coverage on newly acquired automobile is effective automatically during the notice period irrespective of whether notice of acquisition is given); *Canal Ins. Co. v. C.I.T. Financial Services,* 357 So.2d 308 (Miss.1978); *Shelter Mut. Ins. Co. v. Baker,* 753 S.W.2d 646 (Mo.App.1988); James L. Isham, Annotation, *Construction and Application of "Automatic Insurance" or "Newly Acquired Vehicle" Clause,* 39 A.L.R.4th 229 (1985) (courts virtually unanimous in expressing the view that failure to give timely notice of acquiring a replacement or additional vehicle does not affect automatic coverage for liability arising during the notice period). However, a significant minority has determined that, where a contract states that notice is required, notice must be received within the thirty days, even if it is after the accident occurred, in order for coverage to be effective. *See Lowe v. State Farm Mut. Auto. Ins. Co.,* 420 So.2d 318 (Fla.App.1982); *Farm & City Ins. v. Anderson,* 509 N.W.2d 487 (Iowa 1993); *Auto–Owners Ins. Co. v. Winter,* 188 Mich. App. 230, 469 N.W.2d 314 (Mich.App.1991).

Rather than adopt a general rule, we conclude that the best approach is to examine the language of a policy to determine whether it is ambiguous. If so, we shall construe the policy in favor of the insured. However, if the language of the policy is clear and unambiguous, we shall enforce the language as written. Upon examination of the provision at issue, we find the language to be ambiguous. The policy first states that upon obtaining a new vehicle, the company will "automatically consider it to be listed on your Declarations Page." The policy then goes on to state that the new vehicle will have the

same coverages as other listed autos, but that "[f]or the coverages to apply ... you must notify us within 30 days after getting the vehicle." The ambiguity exists with regard to the word "coverages." While this may be interpreted to mean coverage for both the thirty day period and for the remaining term of the policy, it may also only refer to the "same coverages as other listed autos." As a result of the ambiguity in the policy language, we must construe this section in favor of finding coverage for the insured. Thus, we find that the trial court did not err on this issue.

We further note that this conclusion is supported in part by *Ottinger*. In that case, the court determined that the new vehicle was acquired as of December 11, 1978. The insured called his agent to replace his former vehicle with the new vehicle on December 20, 1978. The insured was involved in an accident on January 9, 1979. The insurance company denied coverage on the basis that it did not receive formal notice during the required thirty day period. On appeal, the court did not address the issue of whether notice was properly given by the insured. Rather, the court determined that the accident occurred within the thirty day period and held that "[t]he time allowed under Item 2 of the Conditions section [requiring insured to inform the company of a newly acquired or replacement vehicle within thirty days] had not yet expired and, accordingly, [the insured] was not "out of compliance" with Item 6 [prohibiting any action against the company by an insured who had not fully complied with all terms of the policy]. Therefore, on the date of the accident, the [newly acquired vehicle] was an insured vehicle under the automatic coverage clause in Part I." *Ottinger*, 487 N.E.2d at 446.

Similarly, in the case before us Guzorek was not out of compliance with the policy on the date of the accident. This fact, coupled with the ambiguity of the contract provision, compels us to interpret the contract so as to find coverage for the vehicle in question.

## ISSUE III

Finally, Colonial Penn argues that the trial court erred in granting summary judgment to the Guzoreks on the basis that

they had established, as a matter of law, that Colonial Penn had suffered no prejudice as a result of the delay in notifying Colonial Penn of the accident.

The Colonial Penn policy contained specific provisions regarding the insured's duty to promptly notify the company after a loss:

**What You Must Do After an Accident or Loss**

*Notice of Accident or Loss*

As soon as possible after an accident or loss, *You* must give written notice to us or any of our authorized representatives....

. . . .

*Notice of Claim Against Insured Person*

*You* or another insured person must notify us immediately if a claim is made against anyone insured under this policy. Every demand, notice or other document received by an insured person must be sent to us immediately.

(R. 28) (emphasis in original).

The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind.Ct.App.1993), *trans. denied*. The condition in an insurance policy that the insurer must be notified "as soon as possible" means notice within a reasonable time. *Id.* When the facts of the case are not in dispute, what constitutes reasonable notice is a question of law for the court to decide. *Id.*

In *Miller v. Dilts*, 463 N.E.2d 257 (Ind. 1984), the supreme court held that a showing of an unreasonable delay in giving notice to an insurer gives rise to a presumption of prejudice in favor of the insurer:

Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit.... The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes

one for the trier of fact to determine whether any prejudice actually existed.

*Id.* at 265–66.

■ In the case before us, the accident occurred on October 20, 1992. The first notice which Colonial Penn received regarding the accident came nine months later, on July 16, 1993, when it received a notice of claim from the attorney representing Van Winkle. Further, Colonial Penn did not receive notice of the lawsuit filed by Pocius until after a default judgment had been entered against Donald Guzorek on March 25, 1994. In *Miller*, the supreme court found that a delay of six months after an accident had occurred established unreasonable notification as a matter of law. We similarly conclude here that the notice was unreasonable as a matter of law. Thus, there is a presumption that Colonial Penn was prejudiced by the delay.

■ In response to Colonial Penn's summary judgment motion on this issue, the Guzoreks designated the affidavits of Dorothy Guzorek and Marcia Pocius. These affidavits state that they are familiar with the accident scene and that it has not changed since the accident. Guzorek also stated that the witnesses to the accident, including her husband, Van Winkle, and Pocius, are alive and able to testify. Guzorek further stated that her husband and Pocius had given depositions regarding the accident. In *Koenig v. Bedell,* 601 N.E.2d 453 (Ind.Ct.App.1992), the court found that the insured had failed to rebut the presumption of prejudice as he did not demonstrate that "the scene of the accident had not changed, that the witnesses were still available, or that their memories of the incident had not faded over the passage of time...." *Id.* at 456. We conclude that Guzorek presented sufficient evidence to rebut the presumption of prejudice at the summary judgment stage. However, under *Miller,* after the injured party has introduced some evidence that prejudice did not occur, the question becomes one for the trier of fact to determine whether any prejudice actually existed. Thus, we find that the trial court erred in granting Guzorek summary judgment upon this issue.

We affirm summary judgment on Issues I and II, and reverse and remand for further proceedings regarding Issue III.

SULLIVAN, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent for the following reasons:

I. The unrelated telephone survey was not sufficient to put Colonial Penn on notice that Guzorek engaged in fraud to obtain insurance coverage.

II. The Majority erroneously concludes that the newly acquired vehicle is covered under the insurance policy by finding ambiguous language where none exists.

III. Guzorek did not sufficiently rebut the presumption of prejudice caused by her failure to notify Colonial Penn of the accident until nine months later.

I.

*Notice*

The Majority determines that Guzorek misrepresented material facts in order to obtain insurance coverage from Colonial Penn. Nonetheless, it concludes that Colonial Penn is prohibited from rescinding the policy because it had knowledge that Donald was driving the insured vehicles. In so doing, the Majority relies upon an unrelated telephone survey to impute knowledge to Colonial Penn in order to circumvent the fact that Guzorek engaged in fraud.

The Majority bases its conclusion that Colonial Penn had knowledge of Guzorek's fraud on an unrelated telephone survey conducted by National Reporting Systems, Inc. This survey occurred ten months after Guzorek fraudulently obtained coverage. Guzorek presents no evidence that the purpose of the survey was to verify the information contained in the application or to determine who was driving the insured vehicles. Because there is no evidence showing the purpose of this survey, no basis exists for the Majority's conclusion that Colonial Penn had

notice of the fraud. Moreover, Guzorek was not induced by any action or inaction by Colonial Penn to rely on the purported coverage. She did not intend to include her husband on the insurance policy nor did she believe he was insured. Thus, the purpose of the inquiry notice doctrine is not furthered by imputing knowledge to Colonial Penn.

Instead, the fact remains that Guzorek committed fraud to obtain the insurance coverage. The Majority ignores this because, in its view, Colonial Penn does not argue that Guzorek committed an intentional fraud. It is true that Colonial Penn does not use the exact words "intentional fraud" when describing Guzorek's actions. However, Colonial Penn characterizes Guzorek's actions as "an intentional omission calculated to hide critical information from Colonial Penn in their decision as to whether a policy should be issued to Dorothy Guzorek." Appellant's Br. at 16.

For actual fraud to exist, there must be a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement. The other party must detrimentally rely upon the misrepresentation. *Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992).

Here, Guzorek admits that she intentionally omitted her husband from her application because she knew that it would not be approved if the insurance company knew about his driving record and license suspension. She also stated in both the original application and the survey that neither she nor any operators of her vehicles had been required to file a "Proof of Financial Responsibility" form with the state. Colonial Penn relied upon this information in issuing the policy. Guzorek's actions deprived Colonial Penn of the opportunity to fully evaluate the risk it was taking and to exclude her husband from coverage. Thus, she committed fraud in order to obtain the coverage. She should not

be allowed to now claim that the fraud does not void her coverage.

## II.

### *Ambiguity*

I also disagree with the Majority's determination that the newly acquired vehicle is covered under the insurance policy because the contract is ambiguous. To reach this conclusion, the Majority finds ambiguous language in the insurance contract where none exists. If the language of an insurance contract is truly ambiguous, it should be interpreted in favor of the policyholder. *Great Lakes Chemical Corp. v. International Surplus Lines Ins. Co.,* 638 N.E.2d 847, 850 (Ind.Ct.App.1994), *reh. denied.* However, the mere existence of a controversy does not create ambiguity. *Id.*

My reading of the policy language does not show that the term "coverages" is ambiguous. It refers to the insurance coverages on the newly acquired vehicle (which will be the same as the coverages on other vehicles). In order for those coverages to apply, the insured must fulfill the conditions precedent of notifying the insurance company of the newly acquired vehicle *and* paying any additional premium due. Guzorek fulfilled neither of these requirements. In fact, to this date, she has never made any additional premium payments to cover the newly acquired vehicle. Holding Colonial Penn liable for a risk of which they were never aware and for which they have not been compensated is grossly unfair and unjust.[5]

## III.

### *Prejudice*

Finally, the Majority erroneously concludes that Guzorek sufficiently rebutted the presumption of prejudice caused by her unreasonable delay in notifying Colonial Penn of the accident, thus creating a material issue of fact. Summary judgment is appropriate

---

5. The Majority notes that its conclusion appears to be in accord with *State Security Ins. Co. v. Ottinger,* 487 N.E.2d 446 (Ind.Ct.App.1985). However, *Ottinger* is not applicable because that policy did not impose a duty of notification as a condition precedent to receiving the automatic thirty day coverage. *Id.* at 448. Instead, the question was whether the extended coverage was void due to the lack of notice. *Id.* at 449. Because the accident occurred within the thirty day period, the automatic coverage was still in effect. *Id.* at 450.

when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Bedell,* 601 N.E.2d 453, 454 (Ind.Ct.App.1992). When an insured fails to give reasonable notice to an insurance company of an accident, a presumption of prejudice arises in favor of the insurance company making summary judgment appropriate. *Id.* at 455–56. To create an issue of fact and avoid summary judgment, the insured must present evidence that prejudice did not occur. *Id.*

Here, to rebut the presumption of prejudice, Guzorek and Pocius submitted affidavits stating that they remember the events of the accident and that the scene had not changed. However, those affidavits were not sufficient. They fail to address the prejudice caused by Colonial Penn's inability to inspect or photograph the vehicles involved in the accident. In addition, the affidavits do not address its inability to view temporary aspects of the accident scene such as skid marks and debris. Finally, there is no information concerning the ability of disinterested witnesses, such as the police officer who responded to the accident, to clearly remember the accident. All of this information is important in preparing an adequate defense. Because the affidavits do not address these problems, they are not sufficient to rebut the presumption of prejudice. As a result, summary judgment should have been granted to Colonial Penn.

I would reverse the trial court's entry of summary judgment in favor of Guzorek and grant summary judgment in favor of Colonial Penn on all three issues.

I dissent.