T.C. Memo. 2020-37

UNITED STATES TAX COURT

SEAN MCNAMEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2458-19L.                    Filed March 18, 2020.

<u>Robert S. Fink</u> and <u>Usman Mohammad</u>, for petitioner.

<u>Marissa J. Savit</u> and <u>Mimi M. Wong</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>: In this collection due process (CDP) case petitioner seeks

review pursuant to section 6330(d)(1)[1] of a determination by the Internal Revenue

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] Service (IRS or respondent) to uphold collection action. The IRS issued a notice of intent to levy to facilitate collection of tax return preparer penalties assessed against petitioner for 2009 and income tax liabilities he reported for 2010-2016. Petitioner does not challenge the collection action with respect to the income tax liabilities, and respondent has abated (or agreed to abate) 19 of the 36 return preparer penalties. Remaining in dispute are 17 return preparer penalties assessed under section 6694(a) for 2009, each in the amount of $1,000.

The parties have filed cross-motions for summary judgment under Rule 121. We find no genuine dispute as to any material fact, and we agree with respondent's legal position with respect to the penalties that remain in dispute. We will accordingly sustain the collection action to the extent set forth in this opinion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. Petitioner resided in Connecticut when he filed his petition.

A. Petitioner's Underlying Tax Liabilities

1. Return Preparer Penalties

Petitioner is a certified public accountant who prepared income tax returns for individual taxpayers. The IRS opened an examination to investigate the pro-

[*3] priety of the returns he had prepared for (among other years) the taxable year 2009. On March 5, 2013, the IRS sent petitioner numerous Letters 1125, with enclosed examination reports, explaining that it proposed to assess penalties with respect to the returns he had prepared for 18 taxpayers for 2009. For each return the IRS proposed to assess a $1,000 penalty under section 6694(a) (for "unreasonable positions") and an additional $4,000 penalty under section 6694(b) (for "willful or reckless conduct").

The Letters 1125, commonly called 30-day letters, informed petitioner that he had the right to request a conference with the IRS Appeals Office and that the deadline for filing a protest was April 4, 2013. The 30-day letters advised him that, if he did not appeal, the IRS would assess the penalties and begin collection action. Petitioner requested, and the examining agent granted, an extension of time until April 19, 2013, to submit his protest.

The period of limitations on assessment of penalties under section 6694(a) is three years after the filing of the return with respect to which the penalty is assessed. Sec. 6696(d)(1). Because the penalties concerned returns for 2009, the period of limitations for returns filed without extension was due to expire on or about April 15, 2013. See sec. 6072(a). Concurrently with granting petitioner's request for additional time to file his protest, the examining agent sent him a

**[\*4]** Form 872-D, Consent to Extend the Time on Assessment of Tax Return Preparer Penalty, asking that he agree to extend the limitations period to December 31, 2013. Petitioner declined to execute the Form 872-D.

Facing a limitations period nearing expiration, the examining agent assessed the penalties. Between March 19 and April 15, 2013, the IRS assessed 17 penalties under section 6694(a) and 17 penalties under section 6694(b). The IRS had assessed two additional penalties previously, in December 2012. All 36 penalties concerned returns filed for 2009.

Petitioner submitted by the extended due date a protest concerning the penalties proposed, not only for 2009, but also for 2007, 2008, and 2010. In August 2013 petitioner's protest was assigned to an Appeals officer (AO) in Buffalo, New York. The AO believed that the penalties for 2008 might have been assessed after the period of limitations had expired. After a discussion with her manager, the AO decided to send the entire case back to the Examination Division. The case was never returned to the AO, with the result that the Appeals Office never made a "final administrative determination" regarding the return preparer penalties assessed for 2009. See sec. 1.6694-4(a)(2), Income Tax Regs.

**[*5]** 2.     Individual Income Tax Liabilities

For tax years 2010-2016 petitioner filed Forms 1040, U.S. Individual Income Tax Return, reporting tax due for each year. His returns for 2010 and 2011 were filed late, but the returns for 2012-2016 were filed timely. Petitioner failed to pay the full amounts of tax shown as due on these returns. For each year the IRS assessed the tax shown as due plus applicable additions to tax. See secs. 6651(a)(1) and (2), 6654.

B.     Collection Actions

1.     Lien Notice and First CDP Hearing

In February 2014 the IRS issued petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice). The lien notice covered petitioner's unpaid preparer penalties for 2009 and his unpaid income tax liability for 2011. He timely requested a CDP hearing. His case was assigned to a settlement officer (SO1) in the IRS Appeals Office in Memphis, Tennessee.

In June 2014 SO1 held a telephone CDP conference with petitioner. Petitioner contended that the 2009 penalties had been improperly assessed; SO1 replied that she would need to do additional research. In July 2014, after consulting her manager, SO1 informed petitioner of her view that liability challenges to return preparer penalties were not permitted during a CDP hearing. (Respondent has

[*6] since conceded that this determination by SO1 was erroneous.)  SO1 proceeded to close the case and on July 21, 2014, issued a notice of determination sustaining the lien notice.

The notice of determination advised petitioner that, if he disagreed with SO1's action, he could file a petition with this Court within 30 days, i.e., by August 20, 2014.  See secs. 6320(c), 6330(d).  Petitioner filed a petition on January 5, 2015, more than four months late.  The Court dismissed that case for lack of jurisdiction.  See McNamee v. Commissioner, T.C. Dkt. No. 104-15L (order of dismissal dated May 29, 2015).

2.    Levy Notice and Second CDP Hearing

As relevant here, petitioner's unpaid liabilities (including interest) totaled $265,661 as of March 2018:  $106,602 for 36 preparer penalties assessed for 2009 and $159,059 for income tax liabilities assessed for 2010-2016.  On March 5, 2018, an IRS collections officer hand delivered to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, covering these liabilities.  Petitioner timely requested a CDP hearing, contending that the section 6694 penalties had been "improperly assessed or not assessed at all."  He did not dispute his individual income tax liabilities or indicate that he sought a collection alternative.

[*7] The case was assigned to a settlement officer (SO2) in New Haven, Connecticut. On June 25, 2018, petitioner asked SO2 to provide him with evidence that all penalties had been assessed, plus evidence that the IRS had secured written supervisory approval for the penalties, as required by section 6751(b)(1). During a preliminary phone call on August 3, 2018, SO2 reviewed with petitioner the assessment date for each penalty, and following the call she mailed him a copy of the relevant account transcripts. Petitioner explained that the penalties were the focus of his dispute and that he had stopped paying income tax in order to draw attention to the penalties.

SO2 subsequently received documentation showing timely supervisory approval for the 34 penalties assessed between March 19 and April 15, 2013. She determined that the two penalties assessed in December 2012 had not been timely approved and should be abated.

The CDP hearing was held as scheduled on August 7, 2018. Petitioner stated that he had not been afforded full appeal rights with respect to the penalties and was still awaiting a decision on his 2013 protest. SO2 informed him that he had no other cases currently pending in the Appeals Office. SO2 invited petitioner to discuss possible collection alternatives. He declined, stating that he wanted $1 million in damages, which could be used to offset his tax liabilities.

**[\*8]**  Following the call SO2 reviewed the administrative file and concluded that petitioner had had a prior opportunity to challenge his underlying liability for the 2009 penalties by petitioning this Court after the first CDP hearing.  For that reason SO2 concluded that she could not consider his challenge to his underlying liability for the 34 penalties remaining in dispute.  Since petitioner did not challenge his income tax liabilities, SO2 concluded that she could offer him no relief unless he desired a collection alternative.

On November 20, 2018, SO2 called petitioner to advise him of her conclusions.  Petitioner declined to pursue a collection alternative and said he would take his case to court.  SO2 proceeded to close the case and on November 30, 2018, issued a notice of determination sustaining the proposed levy.

C.  Court Proceedings

On December 28, 2018, petitioner sent a petition to this Court seeking review of the notice of determination.  The petition was sent to the Court via FedEx Priority Overnight service.  Because of a lapse in Government funding the Court was closed from December 28, 2018, to January 25, 2019.  As a result, the envelope containing the petition was returned to petitioner as undeliverable.

The Court's website at the time instructed taxpayers that, "[i]f a document mailed or sent * * * to the Court has been returned, the party that mailed or sent

[*9] the document should remail or resend it to the Court with a copy of the envelope or container in which it was first mailed or sent." Following those instructions, petitioner on January 31, 2019, redelivered to the Court--again by FedEx Priority Overnight service--the petition and the envelope in which it had originally been delivered. The petition was received by the Court and filed on February 1, 2019.

On November 13, 2019, the parties filed cross-motions for summary judgment. Respondent contends that petitioner's underlying liability for the penalties was not properly before SO2 and that she did not abuse her discretion in sustaining the proposed levy. Petitioner does not contest his individual income tax liabilities but contends that the penalties for 2009 were improperly assessed or (in the alternative) that he was never given the opportunity to challenge them. In his response to petitioner's motion respondent agreed to abate all of the section 6694(b) penalties that remained in dispute. Accordingly, only the 17 penalties assessed under section 6694(a) are still at issue.

Discussion

A.   Jurisdiction

This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent expressly authorized by Congress. Naftel v. Commissioner, 85

**[\*10]** T.C. 527, 529 (1985); <u>Breman v. Commissioner</u>, 66 T.C. 61, 66 (1976).

"Jurisdiction must be shown affirmatively, and petitioner, as the party invoking

our jurisdiction * * * , bears the burden of proving that we have jurisdiction over

* * * [the] case." <u>David Dung Le, M.D., Inc. v. Commissioner</u>, 114 T.C. 268, 270

(2000), <u>aff'd</u>, 22 F. App'x 837 (9th Cir. 2001).

Section 6330(d)(1) sets a 30-day jurisdictional deadline for filing a petition

in a CDP case. <u>Guralnik v. Commissioner</u>, 146 T.C. 230, 237 (2016). The notice

of determination sustaining the proposed levy was mailed to petitioner on Novem-

ber 30, 2018. The 30th day after that date was a Sunday, so petitioner's time for

filing was extended to Monday, December 31, 2018. <u>See</u> sec. 7503.

Section 7502(a) provides a "timely mailed, timely filed" rule. A document

delivered by U.S. mail is timely mailed if "the postmark date falls * * * on or be-

fore the prescribed date" and the document is mailed, on or before that date, in an

envelope with "postage prepaid, properly addressed" to the recipient. Sec.

7502(a)(2). Section 7502(f) expands this "timely mailed, timely filed" rule to cer-

tain private delivery services "if such service is designated by the Secretary for

purposes of this section." Sec. 7502(f)(2).

In Notice 2016-30, 2016-18 I.R.B. 676, the IRS listed all private delivery

services that have been designated by the Secretary under section 7502(f). This

[*11] list includes FedEx Priority Overnight service. Petitioner first mailed his petition to the Court via FedEx Priority Overnight service on December 28, 2018, three days before the deadline for filing his petition. Because his petition was timely mailed, it is deemed timely filed, and we thus have jurisdiction over this case.

## B. Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 964 (7th Cir. 1994). The nonmoving party may not rest upon the mere allegations or denials in his pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

The questions before the Court are whether petitioner may challenge his underlying liability for the section 6694(a) penalties and whether SO2 abused her

**[*12]** discretion in sustaining the proposed levy. The parties have filed cross-motions for summary judgment on these questions. We find that they may appropriately be adjudicated summarily.

Section 6330(d)(1) does not prescribe the standard of review that we should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity or amount of the taxpayer's underlying tax liability is properly at issue, we review the Commissioner's determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying tax liability is not properly before us, we review the IRS action for an abuse of discretion. Id. at 182. An abuse of discretion exists when a determination is arbitrary, capricious, or without a sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

C.      Underlying Tax Liabilities

Petitioner does not dispute the income tax liabilities reported on his 2010-2016 returns. He contests only his liability for the section 6694 penalties, which are assessable penalties not subject to deficiency proceedings. See Smith v. Commissioner, 133 T.C. 424, 428 & n.3 (2009). Petitioner was entitled to challenge his liability for these penalties at the CDP hearing unless he had had a prior oppor-

[*13] tunity to dispute them. See sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. A taxpayer has had a prior opportunity to dispute a liability if he participated in an earlier CDP hearing, received a notice of determination regarding the same liability, and was entitled to petition this Court for review of that determination. Bell v. Commissioner, 126 T.C. 356, 358-359 (2006). As we explained in Bell, "[t]his statutory preclusion is triggered by the opportunity to contest the underlying liability, even if the opportunity is not pursued." Id. at 358.

In February 2014 the IRS sent petitioner a lien notice concerning the 36 return preparer penalties assessed under section 6694 for 2009. Petitioner participated in a CDP hearing regarding these penalties. During the hearing he attempted to challenge the penalties, but SO1--erroneously, as respondent now concedes-- did not permit him to do so. Petitioner could have challenged SO1's determination, as well as his underlying liability for the penalties, by filing a timely petition for review in this Court, which he failed to do. Because he failed to take advantage of a prior opportunity to contest the penalties, his underlying liability for the penalties was not properly before SO2 during the second CDP hearing, and he is thus precluded from now advancing that challenge in this Court. See Bell, 126

[*14] T.C. at 358-359. We accordingly review SO2's action for abuse of discretion only.[2]

D.      Abuse of Discretion

In deciding whether SO2 abused her discretion in sustaining the proposed levy, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her responsibilities with respect to petitioner's income tax liabilities and the 17 section 6694(a) penalties assessed during 2013.

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determina-

---

[2]Petitioner contends that denying him an opportunity to contest his liability would violate his Fifth Amendment due process rights. That argument is unpersuasive for at least two reasons. First, petitioner had, but neglected to take advantage of, a prior opportunity to contest the penalties in this Court. Second, although he has forfeited a pre-payment forum, he can still contest the penalties by paying them, filing a refund claim, and filing a refund suit if his claim is denied. See McCormick v. Commissioner, 55 T.C. 138, 142 n.5 (1970).

[*15] tion." For 34 of the 36 penalties, SO2 verified that supervisory approval was timely secured, and petitioner does not challenge that determination. For the two penalties assessed in December 2012, SO2 determined that supervisory approval had not been secured, and she properly had them abated.

With respect to the 34 penalties that were timely approved, petitioner's principal contention is that his administrative appeal of the penalties, initiated by his filing of a protest in April 2013, was never completed by the AO and thus did not yield a "final administrative determination." See sec. 1.6694-4(a)(2), Income Tax Regs. Petitioner contends that a "final administrative determination" was a prerequisite for the assessment of the penalties. He accordingly urges that SO2 did not verify (and could not have verified) that the penalties were properly assessed.

Contrary to petitioner's view, a "final administrative determination" is not an absolute prerequisite to assessment of return preparer penalties. The governing regulation provides that the taxpayer will have the opportunity to receive a final administrative determination before assessment "[u]nless the period of limitations (if any) under section 6696(d) may expire without adequate opportunity for assessment." Ibid.

The regulation does not define an "adequate opportunity for assessment." When the penalties were assessed, however, the Internal Revenue Manual (IRM)

[*16] instructed examining agents that appeals of return preparer penalties should not be submitted to the Appeals Office, in a pre-assessment posture, if fewer than 120 days remained in the period of limitations. IRM pt. 8.11.3.2 (Oct. 19, 2007). If fewer than 120 days remained in the period of limitations, examiners were instructed to assess the penalties and afford the taxpayer post-assessment appeal rights. Ibid. The IRS has since revised its policy so that a case is not submitted to the Appeals Office unless a full year remains in the period of limitations. See IRM pt. 8.11.3.3 (Apr. 24, 2019).

A section 6694(a) penalty must be "assessed within 3 years after the return * * * with respect to which the penalty is assessed was filed." Sec. 6696(d)(1). The section 6694(a) penalties at issue arose from returns for 2009, which were due to be filed (absent extension) on April 15, 2010. See sec. 6072(a). For returns filed on or about that date, the period for assessment was set to expire on or about April 15, 2013. See sec. 6696(d)(1). The 30-day letters proposing these penalties were issued on March 5, 2013, and the IRS granted petitioner's request for an extension of time, until April 19, 2013, to file his protest with the Appeals Office. But petitioner refused to agree to any extension of the period of limitations.

Under these circumstances the examining agent reasonably concluded, with respect to the penalties proposed under section 6694(a), that "the period of limita-

[*17] tions * * * under section 6696(d) may expire without adequate opportunity for assessment." Sec. 1.6694-4(a)(2), Income Tax Regs. He accordingly assessed 17 penalties under section 6694(a) between March 19 and April 15, 2013. Because the period of limitations "may [have] expire[d]" if the agent had not made these assessments, the IRS was not required to issue a final administrative determination on petitioner's appeal before assessing those 17 penalties. Sec. 1.6694-4(a)(2), Income Tax Regs.

Penalties imposed under section 6694(b), on the other hand, are not subject to the three-year period of limitations and may be assessed "at any time." Sec. 6696(d)(1). Because the IRS was not facing an expiring limitations period with respect to the section 6694(b) penalties, respondent now agrees that assessment should have been deferred until petitioner received a final administrative determination following completion of his appeal. Conceding that SO2 in this respect erred in verifying the assessment, respondent has agreed to abate the 17 penalties assessed under section 6694(b).[3]

---

[3]Since penalties for willful or reckless conduct can be assessed "at any time," sec. 6696(d)(1), the IRS is not foreclosed from reassessing the section 6694(b) penalties after affording petitioner the procedural rights to which he is entitled.

**[\*18]** Petitioner cites <u>Romano-Murphy v. Commissioner</u>, 152 T.C. 278 (2019), <u>supplementing</u> T.C. Memo. 2012-330, in support of his contention that all 34 penalties should be abated.  That was a CDP case involving trust fund recovery penalties (TFRPs) under section 6672.  We held  that the IRS erred in assessing the TFRPs before the taxpayer had completed his administrative appeal and received a "final administrative determination" concerning his penalty liability.  <u>Id.</u> at 305.  Because the SO had improperly verified the assessment, <u>see</u> sec. 6330(c)(1), we did not sustain the collection action, <u>see</u> <u>Romano-Murphy</u>, 152 T.C. at 322-333.

The instant case differs from <u>Romano-Murphy</u> in a critical respect.  If a taxpayer in a TFRP case has filed a timely protest of a proposed adjustment, section 6672(b)(3) extends the period of limitations on assessment to the date that is "30 days after the Secretary makes a final administrative determination with respect to such protest."  Section 6672(b)(3) thus tolls the running of the period of limitations during the taxpayer's administrative appeal of the TFRPs and for 30 days after his appeal is concluded.  As we noted <u>Romano-Murphy</u>, tolling of the limitations period during the pendency of an IRS administrative appeal is unusual.  <u>See</u> <u>Romano-Murphy</u>, 152 T.C. at 291-292 ("As a general rule, the three-year period for assessment continues to run during the examination and Appeals processes.

**[\*19]** \* \* \* One exception, which is applicable to the trust-fund-recovery penalty, is found in section 6672(b)(3).").

Neither section 6694 nor section 6696 provides for tolling of the limitations period during an administrative appeal of penalties imposed under section 6694(a). As to them, the IRS faced a risk here that it did not confront in Romano-Murphy (where the limitations period was tolled) or in the case of the section 6694(b) penalties (which could be assessed "at any time"). The regulations under section 6694 create an explicit exception for this situation, providing that the IRS shall furnish the taxpayer with a final administrative determination "[u]nless the period of limitations (if any) under section 6696(d) may expire without adequate opportunity for assessment." Sec. 1.6694-4(a)(2), Income Tax Regs. No similar regulatory exception existed (or was needed) in Romano-Murphy and that case is therefore distinguishable from this one.

Finally, it is clear that SO2 discharged all of her other responsibilities under section 6630(c)(3). Petitioner expressed no interest in a collection alternative, and SO2 was not required to propose one for him. See Aviles v. Commissioner, T.C. Memo. 2020-12, at \*11; Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, aff'd, 592 F. App'x 824 (11th Cir. 2014). The only other issue petitioner raised was his desire to receive $1 million in damages from the

[*20] IRS and use that money to offset his tax liabilities.  This argument was frivolous and in any event was not something that SO2 had jurisdiction to consider.  See Tartt v. Commissioner, T.C. Memo. 2019-112, at *8-*9; Broemer v. Commissioner, T.C. Memo. 2009-72, 97 T.C.M. (CCH) 1365, 1367.

In sum, we find no abuse of discretion in the SO2's determination sustaining the proposed levy with respect to petitioner's individual income tax liabilities and the 17 section 6694(a) penalties that were assessed during 2013.  To implement respondent's concessions,

An appropriate order and decision will be entered.